UNITED STATES of America,
Appellee,

v.

John R. ENGLE, Appellant.

No. 71–1594.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1972.

Decided May 2, 1972.

Robert J. Koster, Cook, Murphy, Lance & Mayer, D. Jeff Lance, Don O. Russell, St. Louis, Mo., for appellant.

**1018**

John A. Newton, Asst. U. S. Atty.,
Daniel Bartlett, Jr., U. S. Atty., St.
Louis, Mo., for appellee.

Before Mr. Justice CLARK,\* MAT-
THES, Chief Judge, and LAY, Circuit
Judge.

MATTHES, Chief Judge.

John R. Engle has appealed from the
judgment of conviction finding him
guilty under a three-count indictment of
violating § 7206(1) Internal Revenue
Code.[1]

Five contentions of error are present-
ed and relied upon for a reversal. The
first claim, which we regard as the cen-
tral issue, is an indirect, if not a head-on,
challenge of the sufficiency of the evi-
dence to warrant submission of the case
to the jury. In appellant's language, the
point is thus phrased:

"Defendant was charged with a fail-
ure to report certain income, undimin-
ished by deductions, on Line 9, Page 1
of Form 1040 for the three years in
question. The Government failed to
prove defendant guilty of such a viola-
tion and the court failed to properly
instruct on the law and evidence as
adduced under the indictment."

Before proceeding to the merits of
this ingenious argument, a review of the
facts, concerning which there is slight
disagreement, will serve to place appel-
lant's position in proper perspective.

During the subject years appellant
was president of Steak'N Shake, a cor-
poration which operated a chain of ap-
proximately 75 drive-in restaurants,
about 20 being in the metropolitan St.
Louis area. For a number of years
prior to 1965, including the taxable
years in question, the American Ciga-
rette Vending Company had been autho-
rized to and had placed cigarette vend-
ing machines in Steak'N Shake restau-
rants in the St. Louis area. Under an
arrangement between appellant and one
of the partners of the vending company,
the latter agreed to and did pay appel-
lant one and one-half cents on every
package of cigarettes sold by the vend-
ing company in the St. Louis area res-
taurants. The evidence conclusively
showed that for 1965, 1966, and 1967,
the unreported income derived from this
source was $3,897.48, $4,400.09, and
$2,119.00, respectively.

It is obvious from the evidence that it
was intended from the outset to carry
out the plan in a clandestine manner to
prevent other officers of the two in-
volved corporations, American Vending
and Steak'N Shake, from gaining knowl-
edge of the transaction. Knowledge of
the payments made to appellant appar-
ently was limited to one Jack O'Shea, an
original partner in the vending compa-
ny, a Mrs. Cronin, who succeeded O'Shea
upon his death, and appellant.

According to the undisputed evidence,
Mrs. Cronin, who ascertained the
amount due appellant on each month's
sale of cigarettes, would draw a check on
the vending company account payable to
that company, would place the check in
the cash register, withdraw currency
equivalent to the amount of the check,
place the currency in an envelope and
deliver it to appellant, who regularly
called at the office of the vending com-
pany for the purpose of taking posses-
sion of the amount of his "take." Ap-
pellant's income tax returns were pre-
pared by Mr. Roark, secretary-treasurer

---

\* Retired Associate Justice of the United
States Supreme Court, sitting by designa-
tion.

1. The counts of the indictment, drawn in
compliance with § 7206(1) charged that
appellant did willfully and knowingly
make and subscribe a United States in-
come tax return which was verified by a
written declaration by appellant, made
under the penalties of perjury, and which
he did not believe to be true and correct
as to every material matter included
therein. Count I alleged appellant's re-
turn for 1965 reported total income of
$35,106.51, whereas he then and there
well knew and believed the correct total
for 1965 was $39,006.50; Count II al-
leged a discrepancy of $4,400.09 in the
return for 1966; Count III alleged a
discrepancy of $2,019.00 in appellant's
return for 1967.

of Steak'N Shake, on the basis of information forwarded him by appellant. Concededly, the amount paid to appellant on the basis of one and one-half cents for each package of cigarettes was not disclosed to Roark because, in appellant's words, "I didn't think it was any of his business."[2]

It should also be stated that the failure of appellant to report the amounts received from the vending company on his 1965, 1966, and 1967 returns was not an issue in the trial. That fact was conceded. The thrust of the defense was that the sum of the payments received over the years did not constitute income in the sense that it was taxable. Appellant vociferously advocated throughout the trial that the total of the payments received by him was spent for entertainment of employees of Steak'N Shake and other persons, for the avowed purpose of promoting the business and good will of the Steak'N Shake Company. He regarded his take as "stash money . . . It was like liquor to me, I stuck it in my pocket and spent it." Thus, stripped of all non-essentials, the heart of the controversy turned on the questions (1) whether appellant was legally relieved from reporting the cigarette payments because he derived no personal gain therefrom, and (2) whether he willfully and knowingly filed a return which was false as to a material matter.

 The foregoing recitation of the facts should suffice to completely dissipate any doubt as to the sufficiency of the evidence to sustain the conviction. Contrary to appellant's submission of error above delineated, the indictment was not couched in language charging appellant with failure to report certain income "on Line 9, page 1 of Form 1040," and successful prosecution was not confined to such a narrow and unrealistic theory. As pointed out above in the

margin, appellant was charged with filing a return believing it not to be true and correct, and that charge was sufficiently proven.

The unique contention here espoused by appellant is closely akin to that advanced by the defendant in Siravo v. United States, 377 F.2d 469 (1st Cir. 1967). In ruling on the question the court observed:

"In our view it is unnecessary to resolve this dispute in semantics, for we hold that a return that omits material items necessary to the computation of income is not 'true and correct' within the meaning of section 7206. If an affirmative false statement be required, it is supplied by the taxpayer's declaration that the return is true and correct, when he knows it is not. Therefore, the government has made out a violation of the section, whether it be labelled 'a perjury statute,' or 'similar in nature'."

377 F.2d at 472 (citations omitted).

We dealt with § 7206(1) in United States v. Lodwick, 410 F.2d 1202 (8th Cir.), cert. denied, 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969). In discussing the statute, Judge Van Oosterhout quoted at some length from Gaunt v. United States, 184 F.2d 284 (1950), cert. denied, 340 U.S. 917, 71 S.Ct. 350, 95 L. Ed. 662 (1951), where the First Circuit stated:

"It seems to us clear that the latter subsection [Section 145(c), the forerunner of Section 7206(1)] makes it a felony merely to make and subscribe a tax return without believing it to be true and correct as to every material matter, whether or not the purpose in so doing was to evade or defeat the payment of taxes. That is to say, it seems to us that the subsection's purpose is to impose the penalties for

---

2. The American Cigarette Vending Company also paid to Steak'N Shake "about" three cents on each package of cigarettes sold in the vending machines located in the Steak'N Shake restaurants. However, no effort was made to conceal this arrangement. A check was drawn monthly by the vending company and mailed to Steak'N Shake at its home office and a complete record was made of the payments by both companies.

perjury upon those who wilfully falsify their returns regardless of the tax consequences of the falsehood."

184 F.2d at 288, quoted in 410 F.2d at 1205–1206.

To summarize, we hold that the evidence sustained the charge as laid in all three counts. The statute mandates that appellant should have reported the amounts he received on his returns. If in fact he expended this income for legitimate deductible purposes, he could have claimed such deductions. He chose not to pursue that course, but rather to completely ignore the income in making his returns.

■ Appellant next complains because the court denied his motion for a mistrial when a witness for the Government, in response to a question on direct examination, referred to the payments received by appellant as "kickbacks." The court, upon motion, ordered the question and answer stricken and admonished the jury to disregard both. However, appellant's motion for a mistrial was denied. We are satisfied the incident did not require a mistrial. Indeed, we suspect the agent's use of the term "kickbacks" was warranted. In any event, no prejudice resulted.

■ Neither did the court err in refusing to admit into evidence a handwritten exhibit, apparently prepared by appellant. The exhibit appears to be a summary of amounts expended by appellant for entertainment, such as bowling, baseball and football games, and refreshments. The summary was admittedly only an estimate of the expenditures; it was not relevant to the basic issue, *i.e.*, whether appellant had willfully filed a false statement within the meaning of the statute and, finally, the information contained on the exhibit was cumulative. Appellant and other witnesses for him testified to appellant's proclivity for being a free spender.

■ Appellant's attack upon the court's instructions is also lacking in substance. The essential elements of the offense were carefully delineated. A verdict of guilty was authorized only upon a finding beyond a reasonable doubt that appellant had not only failed to report the payments, but that such failures were made willfully, deliberately, and knowingly, as distinguished from carelessly, inadvertently, or negligently. The instructions, considered as a whole as they must be, constituted an appropriate submission.

Finally, we are confronted with the contention that the court erred in denying appellant's motion to suppress certain statements made by him to the Internal Revenue Agents during the course of their investigation. This contention rests on the claimed failure of the agents to inform appellant fully of his constitutional rights to remain silent.

■ In this connection, the record reveals that on or about September 24, 1968, Internal Revenue Agent Sorth, accompanied by Special Agent Lewis, interviewed appellant at his home. After entering appellant's home at appellant's invitation, Lewis, who was introduced as a Special Agent, informed appellant that his function was to investigate the possibility of criminal tax fraud. Some time during the course of the interview appellant served the agents coffee and they exchanged pleasantries. During the course of the questioning, appellant was advised of certain rights, but it is conceded that full *Miranda* warnings were not given. Appellant did not testify at the hearing on the motion to suppress.

After a plenary hearing, in which appellant's skilled counsel fully developed what occurred, Judge Meredith denied the motion to suppress. In his memorandum opinion, he observed that the motion turned on the credibility of the witnesses. Judge Meredith's opinion reflects that he examined the written reports made by the agents based on the interviews of appellant on September 24 and two subsequent dates. He made a finding that the written interview contained an accurate report of what tran-

spired and that the warnings given were adequate.

On October 3, 1967, the Internal Revenue Service issued News Release No. 897 relating to procedures for protecting the constitutional rights of persons suspected of criminal tax fraud. Under the announced procedures, "On initial contact with a taxpayer, IRS Special·Agents are instructed to produce their credentials and state: 'As a Special Agent I have the function of investigating the possibility of criminal tax fraud'." "Additional and comprehensive warnings are not mandated unless further investigation becomes necessary. The facts before us bring this case squarely within the quoted portion of the procedures. It stands uncontradicted that Special Agent Lewis imparted this information to appellant. "I showed Mr. Engle my identification, and when we were seated in the breakfast nook, I stated that as a Special Agent I had the function of investigating the possibility of criminal tax fraud."

The courts have with consistency declined to extend the *Miranda* rule "beyond its stated limits." Spahr v. United States, 409 F.2d 1303, 1305 (9th Cir.), cert. denied, 396 U.S. 840, 90 S.Ct. 102, 24 L.Ed.2d 91 (1969). *See also,* Simon v. United States, 421 F.2d 667, 668 (9th Cir.), cert. denied, 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970); United States v. Jernigan, 411 F.2d 471, 472 (5th Cir.), cert. denied, 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 225 (1969); Ping v. United States, 407 F.2d 157, 159 (8th Cir.), cert. denied, 395 U.S. 926, 89 S.Ct. 1784, 23 L.Ed.2d 244 (1969); Cohen v. United States, 405 F.2d 34 (8th Cir.), cert. denied, 394 U.S. 943, 89 S.Ct. 1274, 22 L.Ed.2d 478 (1968). *Cf.* United States v. Leahey, 434 F.2d 7 (1st Cir. 1970). In all of these cases the courts were presented with the identical question now before us, *i.e.,* whether as a prerequisite to use of information obtained in a non-custodial interview with a taxpayer the full *Miranda* warnings are essential. In all but *Leahey,* the court held against the defendant. *Leah-*

*ey* is clearly distinguishable because, unlike our situation, the Special Agent failed to follow the procedures promulgated by the Service above set out.

Here, if ever, we have a non-custodial interrogation. As we have seen, the interview took place in the home of appellant. Nothing was said or done by either the Special Agent or the other agent to indicate that appellant was being detained or deprived in any significant way of his liberty. He fully understood the mission of the agents and cooperated with them voluntarily. Moreover, no information was obtained which proved prejudicial. The information imparted by appellant in the interview squared precisely with his own testimony during the trial. In summary, we hold that the district court was on sound ground in denying appellant's motion to suppress.

The judgment is affirmed.