**UNITED STATES of America, Appellee,**

v.

**Jack BALLARD, Appellant.**

**No. 75–1682.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1976.

Decided April 28, 1976.

Rehearing and Rehearing En Banc Denied June 2, 1976.

Irl Baris, St. Louis, Mo., for appellant; Kenneth H. Graeber, St. Louis, Mo., on brief.

Daniel F. Ross, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellee; Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Robert E. Lindsay, Attys., Washington, D. C. and Donald J. Stohr, U. S. Atty., St. Louis, Mo., on brief.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

A two-count indictment charged appellant Jack Ballard with willfully making and subscribing false income tax returns for calendar years 1969 (count I) and 1970 (count II), in violation of § 7206(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 7206(1).[1] Count I of the indictment alleged that for 1969, Ballard reported gross income from wages in the amount of $10,407, even though he " * * * knew and believed, he [had] received *substantial income* in addition to that heretofore stated." Count II alleged that Ballard's return for 1970 reported a gross income from wages in the amount of $20,730, whereas Ballard "knew and believed, he [had] received *substantial income* in addition to that [amount]." (Emphasis added).

The jury convicted Ballard on both counts and the district court thereafter sentenced Ballard to three years' imprisonment on each count with the sentences to be served concurrently, plus a fine of $2,000 on each count.

Ballard appeals contending (1) that the grand jury proceedings were invalid; (2) that the Government failed to make a submissible case for the jury and that a fatal variance existed between the allegations of the indictment which asserted that Ballard had received "substantial income" in addition to his reported wages each year and the Government's proof which disclosed that Ballard had failed to report certain *gross receipts* from his businesses; (3) that the trial court erred in its application of the Jencks Act (18 U.S.C. § 3500), by denying appellant's counsel access to certain records in the case until late in the trial; (4) that the trial court erred in receiving numerous checks into evidence as exhibits without proof of appellant's endorsement thereon; and (5) that the trial court erred in declining to answer a question submitted by the jury during its deliberations.

We have carefully reviewed the record and conclude that the conviction on count I should be affirmed, but that count II should be reversed for a new trial. Although the trial lasted for five full days, the crucial evidence bearing on this appeal can be summarized with relative brevity.

During the tax years in question, Ballard engaged in two distinct business ventures. In 1969, and, to a lesser extent in 1970, the taxpayer operated a scrap metal and motor vehicle parts business known as Ballard Auto Parts and Ballard Iron & Metal Company. He had engaged in this business for a number of years but phased it out in 1970.

In Ballard's second venture, City Leasing & Drayage Company, he operated a tractor-trailer rental business, leasing tractors and trailers and furnishing drivers to various truck lines that operated generally on a long-haul basis. This business became incorporated on July 18, 1969, and its operations after that date did not enter into the computation of Ballard's alleged understatement of income.

In each of the years in question, Ballard filed an individual income tax return on Form 1040 without attaching any Schedule C—Profit or (Loss) From Business or Profession. In his 1969 return, Ballard disclosed as income only wages received from City Leasing & Drayage Co., Inc. in the sum of $10,407. In 1970, he disclosed wages totaling $20,730, from City Leasing & Drayage Co., Inc. and from a second employer, Metropolitan Towing Co. He supported these amounts by employers' wage and tax (withholding) statements.

For the year 1969, the Government introduced evidence that Ballard Auto Parts and Ballard Iron & Metal Co. had received checks from customers for motor vehicle parts, salvage, and the like in the sum of $15,300, commission income of $330, and rental income of $850. The Government proved these amounts by calling as witness-

---

1. That section, as applicable, reads:
   Any person who—
   (1) Declaration under penalties of perjury.—Willfully makes and subscribes any return, statement, or other document, which con-

tains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * * shall be guilty of a felony * * *.

es customers of Ballard who had issued checks to Ballard Auto Parts and Ballard Iron & Metal in amounts which totaled the figures noted above and which the Government tabulated into a summary of alleged gross income of Jack Ballard doing business as Ballard Auto Parts and Ballard Iron & Metal for calendar year 1969.

In its investigation of City Leasing & Drayage Co. to July 18, 1969, the Government discovered deposits of nearly $46,000 in checks to a bank account at the Northwestern Bank & Trust Company. In checking these deposits, the Government attributed about $7,000 to non-income items and attributed the balance of almost $39,000 as gross receipts of the business of City Leasing & Drayage Co. Ballard reported none of these receipts on his 1969 income tax return. The Government further verified the receipt of about $12,000 of this latter amount by calling customers of Ballard as witnesses. They testified to issuing checks to Ballard doing business as City Leasing & Drayage. See n. 2 infra.

For the year 1970, the Government's summarization disclosed that Ballard Auto Parts and Ballard Iron & Metal had received $3,222.52 for sales of salvage and motor vehicle parts to customers and $2,550 in rental income from third parties for a total "Alleged Gross Income Not Reported" of $5,772.52.

Ballard testified on his own behalf and stated that fires had destroyed his business records and that he had in fact sustained a loss in his businesses during each of the two years in question. He stated he had told Mrs. Dorothy Benigno, a bookkeeper who had prepared his tax returns, that his records had been burned and that he had sustained losses in his businesses for those two years. Ballard quoted Mrs. Benigno as stating that if he could not produce records showing a loss, there was no point in claiming a loss on his tax returns.

With regard to the operation of his salvage and parts business, Ballard, in essence, admitted cashing approximately $11,000 of the checks produced by the Government and stated that he needed the cash in the operation of his business. He said that he paid cash for used cars and converted these cars to scrap after salvaging useable parts and testified that he spent all cash receipts in operating this business. With respect to the leasing company, Ballard testified generally that his expenses exceeded his gross receipts.[2]

The principal issue on this appeal focuses upon appellant's contentions that he sustained a business loss for the years in question and that the Government could not establish its case by mere proof of gross receipts but was required to demonstrate Ballard's receipt of income, measured by gross receipts less expenses. To prove the violation, the prosecution contends that it need only show a willful failure to report gross receipts from a trade or business.

In *Siravo v. United States,* 377 F.2d 469 (1st Cir. 1967), the indictment charged taxpayer with violations of § 7206(1), and with failure to file a tax return under § 7203. The indictment was phrased in terms of willfully failing to disclose "substantial *gross receipts* from a business activity * * *." (Emphasis added). The proof established that the taxpayer operated as a subcontractor assembling jewelry components for various manufacturers and that he failed to disclose any gross receipts from that business in his tax returns for several years. No evidence surfaced as to the amount of any costs or expenses sustained by the taxpayer. In affirming the conviction, the court said that a tax return that "omits material items necessary to the computation of income is not 'true and correct' within the meaning of section 7206." *Id.* at 472.

■ This circuit has addressed analogous issues in *United States v. Lodwick,* 410 F.2d

---

2. Witnesses who had identified checks issued to City Leasing & Drayage Co. testified that the checks represented a payment of the total charge for rental of the tractor-trailer and use

of the driver, out of which appellant would have to pay the driver and such operating expenses as gasoline, maintenance, insurance, upkeep, and other items.

1202 (8th Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969), and *United States v. Engle,* 458 F.2d 1017 (8th Cir. 1972). Taxpayers were both charged with § 7206(1) violations and in both cases we made clear that under § 7206(1), the Government did not need to establish an actual tax deficiency in a § 7206(1) prosecution. The burden rests upon the taxpayer to disclose his receipts and claim his proper deductions. In both *Engle* and *Lodwick,* taxpayers received moneys that clearly were income. *See also United States v. Romanow,* 509 F.2d 26 (1st Cir. 1975); *United States v. DiVarco,* 484 F.2d 670 (7th Cir. 1973); *United States v. Jernigan,* 411 F.2d 471 (5th Cir. 1969).

In this indictment, the Government alleged that Ballard received "substantial income" in addition to the amounts which he disclosed on his tax returns. The Government here contends that all gross receipts represent income which must be reported.

█ But gross receipts may or may not represent income, depending on the circumstances. As the late Circuit Judge Johnsen observed in *Clark v. United States,* 211 F.2d 100 (8th Cir. 1954):

> Of course, gross income and not gross receipts is the foundation of income-tax liability, for it is only earnings, profits and gains which the statute subjects to tax. And manifestly, gross receipts can not be called gross income, insofar as they consist of borrowings of capital, returns of capital, or any of the other items which * * * the Internal Revenue Code * * * has excluded from gross income. But when all of these things have duly been taken into account, no matter by what process it has been done, the amounts remaining of Gross Receipts necessarily may, in its character as a result, properly reflect taxpayer's Gross Income, which it is his duty to report. [*Id.* at 102.]

In the early tax case of *Doyle v. Mitchell Bros. Co.,* 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054 (1918), the Court said:

> Whatever difficulty there may be about a precise and scientific definition of "income," it imports, as used here, something entirely distinct from principal or capital either as a subject of taxation or as a measure of the tax; conveying rather the idea of gain or increase arising from corporate activities. As was said in *Stratton's Independence v. Howbert,* 231 U.S. 399, 415, 34 S.Ct. 136, 58 L.Ed. 285: "Income may be defined as the gain derived from capital, from labor, or from both combined."
>
> Understanding the term in this natural and obvious sense, it cannot be said that a conversion of capital assets invariably produces income. If sold at less than cost, it produces rather loss or outgo. Nevertheless, in many if not in most cases there results a gain that properly may be accounted as a part of the "gross income" received "from all sources"; and by applying to this the authorized deductions we arrive at "net income." In order to determine whether there has been gain or loss, and the amount of the gain, if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period under consideration. [*Id.* at 185, 38 S.Ct. at 469, 62 L.Ed. at 1059.]

The general term "income" is not defined in the Internal Revenue Code. Section 61 of the Code, 26 U.S.C. § 61, defines "gross income" to mean

> all income from whatever source derived, including (but not limited to) the following items:
>
> (1) Compensation for services, including fees, commissions, and similar items;
>
> (2) Gross income derived from business;
>
>     *   *   *   *   *   *
>
> (5) Rents [.]
>
>     *   *   *   *   *   *

Treasury Regulation § 1.61–3 (1976) explains "Gross income derived from business" and reads in part:

> (a) In general. In a manufacturing, merchandising, or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from in-

vestments and from incidental or outside operations or sources.

Applying these definitions to the respective contentions made by the parties, it appears that the Government makes too broad a claim in asserting that gross receipts invariably measure income or gross income. Conversely, the appellant's argument that all business expenses must be deducted from gross receipts to measure income or gross income defines income too narrowly.

In count I (1969), Ballard's gross receipts from his leasing operations of trucks and truck-trailers (City Leasing & Drayage Company) amounted to almost $39,000, and commissions and rentals received incident to his scrap business amounted to $1,180. These receipts clearly constituted items of gross income which Ballard was required to report pursuant to § 61 of the Code. However, the approximately $15,000 which Ballard received from the sales of salvage and motor vehicle parts did not entirely represent gross income for in the merchandising of scrap and motor vehicle parts, Ballard's gross income excluded the cost of goods sold. Treas.Reg. § 1.61–3. However, since Ballard could not produce records of his salvage and parts business for 1969 and 1970, the Government had no means of showing Ballard's cost of goods for those years.[3]

■ Gross receipts necessarily represent a starting point in ascertaining gross income. Although some of Ballard's gross receipts from his parts and salvage business for the year 1969 may not have been gross income, as we have already observed, Ballard received about $39,000 in gross receipts

from his leasing business and over $1,000 as commissions and rental income—all of which clearly constituted gross income and should have been reported. Additionally, the documentation provided by Ballard's tax returns for the two years prior to 1969 strongly implied that a substantial part of the receipts from the salvage and parts operations for 1969 represented gross income.[4]

■ The Government's burden here is less than in a tax evasion case. In the latter, the prosecution must show taxpayer's receipt of taxable income. *United States v. Romanow*, 509 F.2d 26, 28 (1st Cir. 1975); *United States v. DiVarco*, 484 F.2d 670 (7th Cir. 1973); *United States v. Jernigan*, 411 F.2d 471, 473 (5th Cir. 1969). The prosecution's burden here is similar to that in a failure to file case in which evidence of unexplained receipts shifts to the taxpayer the burden of coming forward with the amount of offsetting expenses. *See Siravo v. United States, supra*, 377 F.2d at 473–74. Thus, the evidence of unexplained receipts here established a prima facie case of taxpayer's failure to disclose substantial amounts of gross income.

■ Our examination of the record discloses that the district court did not instruct the jury that in a merchandising business gross income means gross receipts less costs of goods sold.[5] The taxpayer did not request such an instruction and its absence caused no prejudice to the appellant as to count I (1969 return) since the evidence disclosed substantial omissions in the reporting of taxpayer's gross income from nonmerchandising and merchandising businesses.

---

**3.** The 1968 closing inventory as reflected by the Schedule C attached to Ballard's 1968 income tax return showed a small inventory of approximately $2,000, which presumably was carried over to 1969 and could be deducted from the gross receipts of the salvage and parts business in ascertaining gross income or gross profit from that business in 1969.

**4.** Ballard's 1967 and 1968 tax returns, which were admitted into evidence show the following: In 1967, Ballard Iron & Metal had gross

sales of almost $79,000, less cost of goods sold of about $53,000, for a gross income or gross profit of about $26,000. In 1968, Ballard Iron & Metal made gross sales of over $41,000 but the cost of goods sold amounted to $27,000, resulting in gross income (or gross profit) of about $14,000.

**5.** The Government failed to cite Treas.Reg. § 1.61–3 to this court. We must assume that it also failed to call this regulation to the attention of the district court.

■ We are, however, concerned about the conviction on count II for there the Government relied on sales receipts of the salvage and parts business in the sum of approximately $3,000, plus rental income of approximately $2,500, to show omission of gross income and to prove a willful failure to report "substantial income" in addition to wages.

Ballard in 1970, sought to liquidate his salvage yard operation. Testimony established that at least one sale of salvage in the sum of $500 represented a bulk sale of inventory. Although Ballard could not document his opening inventory for the year 1970, nor other costs of the goods sold, the fact that Ballard was liquidating his scrapyard suggests that a substantial part of the gross receipts from that sale of salvage and parts probably represented Ballard's carryover inventory. Moreover, the appellant offered evidence that he had received the rental income from individuals who were apparently sublessees and that he incurred substantial offsetting expenses in paying his own landlord.

The jury deliberated about nine and one-half hours and requested and received a rereading of the instructions. The Government presented a substantially weaker case to support the 1970 violation (count II) as compared to the 1969 violation (count I). Thus, the absence of an instruction defining gross income under Treas.Reg. § 1.61–3, as it relates to the merchandising business may have prejudiced appellant materially.[6] Under the circumstances related here, the interests of justice require that we consider the omission of the special definition of gross income as it applies to the merchandising business as constituting plain error. Thus we vacate the conviction on count II and remand for a new trial on that count should the Government be interested in further prosecution.[7]

**II. *Other Issues.***

The appellant contends that the district court erred in not permitting his counsel to cross-examine Internal Revenue Agent Henry Purk concerning expenses incurred in the truck leasing business after Purk had testified on direct examination that he had ascertained gross receipts from an examination of taxpayer's bank records relating to City Leasing & Drayage Company and that the account also disclosed some expenses of Ballard's operations.

In sustaining the Government's objections to the questions as irrelevant, the court recognized that proof of expenses bore upon the issue of willfulness since the appellant claimed that he sustained a loss and did not realize that he was required to report gross income items if he did not intend to claim a loss. However, the court ruled, in essence, that appellant's counsel could call Agent Purk as his own witness during the appellant's case, treating Purk as a hostile witness rather than pursue the matter on cross-examination. According to the record made outside the jury's presence, Agent Purk would have testified that after deducting expenses as shown by the bank account, the operations of City Leasing & Drayage produced a profit of approximately $12,000. Appellant's counsel did not choose to call Agent Purk for additional testimony.

■ Although the court very well might have permitted appellant's counsel to cross-examine Purk on the expense issue during the prosecution's case as related to the issue of taxpayer's willful intent, the district court's exercise of its discretion to the contrary in the context of this case did not amount to prejudicial error. The court's ruling fell within its broad discretion in regulating the order of presenting evidence at the trial. *See United States v. Webb,* 533 F.2d 391 (8th Cir., 1976).

6. Otherwise, the court appropriately defined gross income as

  \* \* \* all income from whatever source derived, including, but not limited to the following items:

    1. Gross income derived from business

    2. Rents

    3. Compensation for services, including fees, commissions, and similar items.

7. This reversal affects only the taxpayer's total fine as the sentence otherwise runs concurrently on counts I and II.

■ The appellant also objects to the receipt in evidence of certain checks which did not bear the genuine endorsement of Ballard or his wife. The evidence established, however, that the checks in question were made payable to Ballard or to his business. Others may have endorsed Ballard's name on these particular checks. Those checks represented only a relatively small portion of the receipts of Ballard's salvage and parts operation. Ballard admitted that either he or his wife signed and cashed checks representing about $11,000 of the approximately $15,000 received in the salvage business. We see no clear error here and in any event, if any error existed, the appellant suffered no prejudice through this ruling.

■ Ballard also claims the court erred in refusing to respond to questions asked by the jury during its deliberations.[8] The trial court answered the first question upon agreement of the parties but in its discretion properly declined to search the transcript to obtain a specific answer to the second question. The court advised the jury to answer the second question from its collective recollection of the evidence. The district court committed no error in this ruling.

We have also examined other contentions raised by the appellant. They are without substantial merit.

Accordingly, we affirm on count I, and for reasons heretofore stated, reverse and remand on count II.

---

**8.** The jury asked two questions. The first, "(1) May we have the dates of the fires?" was answered by the court. The second question