JACK BALLARD and MARY BALLARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JACK BALLARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ballard v. Commissioner
Docket Nos. 5051-76, 5052-76.
United States Tax Court
T.C. Memo 1982-466; 1982 Tax Ct. Memo LEXIS 279; 44 T.C.M. (CCH) 829; T.C.M. (RIA) 82466; August 10, 1982. Irl B. Baris, for the petitioners. Robert P. Edler and Henry Thomas Schafer, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: In these consolidated cases, respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes: Addition to Tax
Petitioner
Docket No.
Year
Deficiency
Sec. 6653(b) [1]
Jack Ballard and
Mary Ballard
5051-76
1967
$785.74
$777.63
1969
17,164.89
8,300.38
1970
531.21
2,202.40
Jack Ballard
5052-76
1968
3,907.72
2,670.13
After concessions, [2] the issues for decision are: 1. Whether petitioners underreported income as determined by respondent for the years in issue. 2. Whether petitioner *282 Mary Ballard may avoid liability for the deficiencies determined by respondent for 1969 and 1970 as an innocent spouse pursuant to section 6013(e). 3. Whether petitioner Jack Ballard is liable for the fraud addition to tax under section 6653(b) for the years in issue. 4. Whether the statute of limitations bars assessment and collection of the deficiencies determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Jack Ballard and Mary Ballard, husband and wife, resided in St. Louis, Missouri, on the date that their petitions were filed in these cases. Jack Ballard filed a separate individual Federal income tax return for 1968, and he filed a joint return with his wife, Mary, for 1969 and 1970. The deficiencies and additions to tax which are at issue in the instant case are essentially, although not exclusively, the result of respondent's adjustments to Jack Ballard's (hereinafter petitioner) trade or business income. During such years, petitioner conducted his business activities through sole proprietorships, a partnership, and a corporation. For the sake of clarity we have organized the facts as they pertain to *283 petitioner's various business ventures. Ballard Iron and Metal
During 1967 through 1970, petitioner owned and operated as a cash basis sole proprietorship Ballard Iron and Metal Company (which was also known as Ballard Auto Parts), a scrap iron and automobile salvage business. This business was located at 3901 North Broadway, St. Louis, Missouri, on property which petitioner rented for $225 per month from Krey Packing Company (hereinafter Krey). During 1968, petitioner paid Krey a total of $1,800 rent with respect to such property, however, he claimed a $2,700 deduction for rent paid to Krey on his 1968 Federal income tax return. On August 31, 1968, a 1966 Chevrolet truck which petitioner had used in his scrap iron and automobile parts business was totally destroyed by fire, but petitioner received $2,100 from his insurance company with respect to such loss. At the time of this fire, petitioner's adjusted basis in the 1966 Chevrolet truck was $1,950 [3] and thus his gain from the involuntary conversion of such truck was $150. [4] Petitioner did not report this gain on his 1968 return, but instead he claimed a $900 depreciation deduction on such return with respect to that *284 truck. [5]
During 1969, Ballard Iron and Metal received 98 checks (hereinafter sometimes referred to as the 1969 auto parts receipts) from 28 companies in payment for sales of scrap metal, auto parts, and a trailer and truck. The 1969 auto parts receipts totalled more than $17,000, and all but six *285 of these checks [6] were payable to Ballard Iron and Metal, Jack Ballard, or Ballard Auto Parts. Jack Ballard endorsed at least 70 of these checks, most of the remaining checks carried the endorsement of Ballard Auto Parts, Ballard Iron and Metal, Mary Ballard, or some combination thereof. Some of these checks were deposited in bank accounts maintained by Ballard Iron and Metal, but most of the checks were cashed at a gasoline service station operated by Gilbert L. Burpo and owned by the C.C. Dillon Company. Petitioner's 1969 joint Federal income tax return failed to reflect any of the 1969 auto parts receipts, and it failed to reflect in any fashion the existence of, or the results of, the operation of Ballard Iron and Metal. From November of 1969 through February of 1970, petitioner leased to Jasper Cillo (hereinafter Cillo) for $425 per month an open lot located on the property *286 which petitioner was renting from Krey. Under the terms of Cillo's rental arrangement with petitioner, Cillo had the use of a lot and a little green building on the property at 3901 North Broadway, but he did not have the use of a two-story brick building located at the rear of the property, which petitioner used as an office for some of his businesses.Cillo, like petitioner, was in the auto parts and salvage business. Cillo owned a company called Jay's Auto Parts and Salvage, Inc. At the time of Cillo's rental arrangement with petitioner, Cillo had a contract with the city of St. Louis to tow abandoned cars off the city's streets. Cillo would bring the abandoned cars to the lot at 3901 North Broadway, where he would dismantle and salvage them. As a result of Cillo's business activities, he was present at such lot on a daily basis. During 1969, Cillo paid a total of $850 to petitioner pursuant to his rental agreement with petitioner. Petitioners did not report this $850 of rental income on their 1969 joint Federal income tax return. During 1970, petitioner had receipts (hereinafter the 1970 auto parts receipts) from sales of scrap or auto parts by Ballard Iron and Metal *287 which included the amount of $3,222.52 from the following sources: Grossman Iron and Steel Company ($42.12); Key Auto Parts Company ($2,200); Luria Brothers and Company, Inc. ($290.40); Rich's Foreign Car Salvage ($125); and Vito's Auto Salvage ($565). These 1970 auto parts receipts were paid to petitioner by the aforementioned businesses by check and petitioner's endorsement appears on each of such checks. Petitioners' 1970 joint Federal income tax return failed to reflect any of the 1970 auto parts receipts, and it failed to reflect in any fashion the existence of, or the results of, the operation of Ballard Iron and Metal. In addition to the 1970 auto parts receipts, petitioner received $850 from Cillo in rental income during that year pursuant to the aforementioned rental arrangement, which ended in February of that year. Petitioner then rented the lot at 3901 North Broadway to Vito's Auto Salvage for $425 per month for four months during 1970. Vito's Auto Salvage paid such rent by check and petitioner's endorsement appears on all four of the monthly rent checks that he received from Vito's Auto Salvage during 1970. Petitioners, however, did not report any of the rental *288 income which petitioner received from Cillo and Vito's Auto Salvage during 1970 on their joint return for that year. N and B Leasing and Drayage Company; City Leasing and Drayage Company
From April of 1968 until February or March of 1969, petitioner and Fred Neistat (hereinafter Neistat) were equal partners in a truck leasing business known as N and B Leasing and Drayage Company (hereinafter N and B). Neistat contributed $500 to the partnership and petitioner paid for the first four trucks that N and B purchased. While the record is not clear on the exact size of N and B's truck fleet, the trucks that N and B purchased for use in its busienss were old and used, and they varied in price from $300 to $1,000. N and B's usual customers were large truck companies which were charged $7.50 per hour to lease a truck and a driver from N and B. The truck companies which did businss with N and B would always pay for N and B's services by check. Neistat spent most of his time soliciting business for N and B, while petitioner directed most of his efforts towards maintaining the trucks and keeping them running. Beginning in June or July of 1968, petitioner and Neistat each periodically *289 received weekly salary from N and B in the amount of $250. In May of 1968, N and B opened its first checking account with the Bremen Bank and Trust Company (hereinafter the Bremen Bank), St. Louis, Missouri. During 1968, N and B made $37,217.56 in deposits to this checkfing account of which $24,823.38 were checks from 11 truck companies in payment for truck leasing services, and $1,495 consisted of non-income transfers and bank credits. [7] In approximately October of 1968, N and B closed its account at the Bremen Bandk and it opened a checking account with the Northwestern Bank and Trust Company (hereinafter the Northwestern Bank), St. Louis, Missouri. During 1968, N and B deposited $47,077.57 in the Northwestern Bank, of which $27,937.42 were checks from 12 truck companies in payments for truck leasing services, and $2,440 consisted of non-income items. In addition to N and B's deposits in its checking accounts at the Bremen Bank and the Northwestern Bank, the partnership had payments during 1968 of a least $537.75 from truck companies which it did not deposit in either checking account. *290 N and B did not file a partnership return (Form 1065) with respect to 1968 as required by section 6031. On petitioner's 1968 return he reported truck leasing income of $6,700 from N and B. During 1969, N and B made deposits in its checking account at the Northwestern Bank totalling $33,530.35, of which $23,709.54 consisted of checks from 15 companies in payment for truck leasing services. During part of 1969, N and B conducted some business under the name Gateway Express Company for approximately one and one-half months. In February of 1969, N and B also opened up a checking account in the name of Gateway Express Company at the North St. Louis Trust Company, St. Louis, Missouri. The deposits in this account totalled $5,388.35, of which $420.60 represents checks from two companies in payment for truck leasing services. In addition to these deposits, N and B had at least $2,525.82 in receipts from its operations, including those of Gateway Express Company, which it did not deposit in any checking account. N and B did not file a partnership return (Form 1065) with respect to 1969 as required by section 6031.On petitioners' 1969 joint return, petitioners failed to reflect in *291 any fashion the existence of, or the results of, the operation of N and B. During the first half of 1969, petitioner operated as a sole proprietorship a truck leasing businss known as City Leasing and Drayage Company (hereinafter City Leasing). On July 18, 1969, petitioner incorporated this business and continued to operate it through 1970. During 1969, City Leasing maintained a checking account at the Northwestern Bank to which total deposits were made in the amount of $45,986.02. At least $14,624.32 of this $45,986.02 in deposits represented checks from 12 businesses in payment for truck leasing services, and $2,746.21 represented non-income items. After its incorporation, City Leasing paid petitioner $10,407 in wages during 1969. On petitioners' 1969 joint return, the only income which they reported were the wages that petitioner received from City Leasing during that year. On petitioners' 1970 joint return, the only income shown thereon were wages that petitioner received from City Leasing and the Metropolitan Towing Company [8] of $11,780 and $8,950, respectively. *292 Fraud Conviction
During 1975, petitioner was convicted of willfully making and subscribing a false income tax return for 1969 in violation of section 7206(1), by failing to report that he received substantial income in addition to what was shown thereon. [9]
*293 With respect to petitioner's criminal case for 1969, the government introduced evidence that Ballard Iron and Metal had received checks from customers for auto parts, salvage, and the like in the sum of $15,300, commission income of $330, [10] and rental income of $850. The government proved these amounts by calling customers of Ballard Iron and Metal who had issued checks in such amounts. Furthermore, in its criminal case against petitioner for 1969, the government established that City Leasing had deposits at the Northwestern Bank of checks totalling almost $46,000. The government attributed about $7,000 of these deposits to non-income items and attributed the balance of almost $39,000 as City Leasing's gross receipts. The government was able to verify petitioner's receipt of about $12,000 of these gross receipts by calling customers of petitioner who testified that they issued checks to petitioner doing busienss as City Leasing. [11]
*294 Notice of Deficiency
On March 23, 1970, petitioner filed his 1968 Federal income tax return with the Internal Revenue Service. The return was prepared by Dorothy Benigno (hereinafter Benigno) of the B and B Bookkeeping and Tax Company, St. Louis, Missouri. Petitioner attached a signed statement to such return which provides, in pertinent part, the following: I am Hereby filing my 1968 Income Tax return, and based on the Information available to me at this Time, I am approxamating [sic] my income to the best of my ability. On April 25, 1972, petitioners filed their 1969 and 1970 Federal income tax returns, which were also prepared by Benigno of the B and B Bookkeeping and Tax Company. On March 11, 1976, respondent issued a notice of deficiency to petitioner with respect to 1968, and one to petitioner and his wife, Mary, with respect to 1969 and 1970, setting forth the above stated deficiencies. Respondent further determined all or part of the underpayments of tax required to be shown on the returns for the years in issue was due to fraud. The following chart shows the taxable income reported on petitioners' returns, the taxable income as determined by respondent, *295 and the amount of unreported taxable income determined by respondent. Taxable Income
Taxable Income
Unreported Taxable
Reported on
as Determined
Income as Determined
Petitioner
Year
Return
by Respondent
by Respondent
Jack Ballard
1968
$6,062.05
$16,326.24
$10,264.19
Jack Ballard and
1969
7,607.00
49,699.56
42,092.56
Mary Ballard
1970
17,855.00
19,704.85
1,849.85
The adjustments that respondent made to petitioners' income can be summarized by the following chart: Jack Ballard
Jack Ballard and Mary Ballard
Adjustment
1968
1969
1970
1. Ballard Iron and Metal
$1,950.00
$15,547.87
$1,847.32
and Metal
2. N & B
8,155.45
6,595.45
3. City Leasing
12,921.05
4. Sale of Home
6,687.75
5. Commission Income
330.00
6. Miscellaneous Items
158.74
10.44
2.53
The Ballard Iron and Metal adjustment for 1968 reflects respondent's determination that petitioner overstated by $900 the deduction that he claimed for rent paid to Krey. This adjustment also reflects respondent's disallowance of the full year's depreciation that petitioner claimed with respect to the 1966 Chevrolet truck *296 which was totally destroyed by fire on August 31, 1968. Finally, the adjustment includes $150 of unreported gain that petitioner realized as a result of collecting fire insurance proceeds in excess of his adjusted basis in such truck. [12]
Respondent's 1969 and 1970 Ballard Iron and Metal adjustments reflect the checks which Ballard Iron and Metal received during each of those respective years, plus some other items, including the rental income which Cillo and Vito's Auto Salvage paid to petitioner during such years. With respect to the 1969 and 1970 Ballard Iron and Metal adjustments, respondent allowed petitioner to claim depreciation deductions, which were based in significant part on carrying forward the applicable amounts based on the depreciation schedule (Schedule C) for the Ballard Iron and Metal proprietorship attached to petitioner's 1968 return. The adjustments also reflect business expenses paid by petitioners and respondent's 1969 adjustment reflects a cost of goods sold (inventory) allowance equal to the year-end inventory which petitioner listed *297 on his 1968 return. The N and B adjustment to petitioner's income for 1968 reflects petitioner's distributive share of income from the N and B partnership less the $6,700 of N and B income which petitioner reported on his return for such year. Respondent's determination of petitioner's N and B income was done by applying the bank deposits method, as set forth in n. 7, supra. Respondent also applied the bank deposits method in calculating the N and B adjustments in 1970. All of the remaining adjustments set forth on the chart, supra, except the $158.74 miscellaneous item for 1968, [13] have been conceded by petitioners either at trial or on brief. *298 ULTIMATE FINDINGS OF FACT Petitioners underreported income for all years in issue. Part of petitioners' underpayments of tax for each of the years in issue was due to fraud with intent to evade tax within the meaning of section 6653(b). Petitioner Mary Ballard is not relieved of liability with respect to any deficiencies in income tax for the years 1969 and 1970 as an innocent spouse pursuant to section 6013(e). OPINION We must determine whether petitioners are liable for deficiencies and additions to tax as determined by respondent for the years in issue. Issue 1: Income
We believe that the record provides ample support for respondent's determination of petitioners' income for the years in issue. Moreover, petitioners have the burden of proving that such determination is erroneous and they have failed to do so. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Since most of respondent's adjustments pertain to Ballard Iron and Metal, N and B, and City Leasing, we will consider these businesses first. *299 Ballard Iron and Metal
During 1968, 1969, and 1970, petitioner operated Ballard Iron and Metal as a sole proprietorship. For 1968, respondent made three specific item adjustments to the business income of Ballard Iron and Metal, which total $1,950. These three specific item adjustments pertain to rental expense, depreciation, and gain from an involuntary conversion. Petitioner conceded these adjustments at trial and, consequently, we find that petitioner underreported his taxable income for 1968 in the amount determined by respondent. [14]
On their 1969 and 1970 joint returns, petitioners did not even indicate that petitioner was operating Ballard Iron and Metal. Their returns for these years listed their gross income as consisting solely of "wages" earned by petitioner from City Leasing and the Metropolitan Towing Company. Petitioners argue that they did not understate their tax liability for these years because their business expenses *300 and losses exceeded any additional income they might have had. [15] Petitioners, however, have failed to produce adequate books and records to substantiate their claim that Ballard Iron and Metal did not show a net profit for 1969 and 1970. For the reasons set forth below, we uphold respondent's reconstruction of Ballard Iron and Metal's net profit for such years. A taxpayer is required to maintain adequate books and records to enable him to file a correct return. Secs. 1.446-1(a)(4), 1.6001-1(a), Income Tax Regs. If a taxpayer fails to maintain adequate records, the Commissioner is authorized to reconstruct the taxpayer's income in accordance with such method as in his opinion does clearly reflect income. Sec. 446(b). Respondent's reconstruction of petitioners' income from Ballard Iron and Metal was done pursuant to the specific item method. [16] *301 Respondent's application of the specific item method revealed that petitioner's scrap metal and auto parts business had sales in excess of $17,000 and $3,000 in 1969 and 1970, respectively. Respondent has documented these sales by introducing in evidence more than 100 checks (the 1969 and 1970 auto parts receipts) from more than two dozen companies which made purchases from Ballard Iron and Metal. Most of these checks were endorsed by petitioner, either in his own name or in the name of Ballard Iron and Metal or Ballard Auto Parts. [17] Moreover, some of the checks which were not endorsed by petitioner were endorsed by his wife, Mary Ballard. In addition to these checks, petitioners failed to report on their 1969 and 1970 returns the rents that petitioner received from Cillo and Vito's Auto Salvage during 1969 and 1970. Since petitioner received these rental payments with respect to a portion of the property (i.e., the lot) on which *302 he was doing business as Ballard Iron and Metal, respondent included these rental payments in his reconstruction of the business's income. *303 In calculating the net profit of the business for 1969 and 1970, respondent made every effort to credit petitioners with all expenses that could possibly be documented. Respondent allowed a deduction for rent that petitioner paid to Krey in the amount of $1,800 and $3,375 for 1969 and 1970, respectively. [18] Respondent further allowed certain depreciation deductions, which were based in a significant part on carrying forward items appearing on the Schedule C that petitioner attached to his 1968 return. Finally, respondent determined that Ballard Iron and Metal's cost of goods sold allowance for 1969 should be its year-end inventory for 1968, which amount petitioner listed on his 1968 return; no amount was allowed for 1970.We think that respondent's use of such amounts is justified on the record before us, particularly in light of petitioner's own testimony that he was "shying away from" the salvage and auto parts business in 1969 and 1970. *304 After taking into account the aforementioned income items and expenses [19] of Ballard Iron and Metal, the business shows a net profit for 1969 and 1970 which is equal to the Ballard Iron and Metal adjustments which respondent made to petitioner's income for such years. Since petitioners failed to list any net profit for Ballard Iron and Metal on their returns for 1969 and 1970, petitioners clearly understated their income from such business during those years. Moreover, in light of petitioner's concession with respect to the 1968 adjustment, we find that petitioner also underreported his income for such year. N and B and City Leasing
Petitioners have not disputed the existence of the N and B partnership from about April of 1968 to the spring of 1969, and that petitioner was an equal partner therein with Neistat; petitioners also do not contest that petitioner began operating City Leasing during the first part of 1969 as a proprietorship and then incorporated the business on July 18, 1969. On his 1968 return, petitioner reported a round *305 figure of $6,700 for income described as "N and B Leasing Company truck leasing income." On petitioners' 1969 joint return, they reported that petitioner had "wages" from City Leasing in the amount of $10,407, but failed to reflect in any fashion the existence of, or the results of, the operation of N and B. Respondent reconstructed petitioners' City Leasing and N and B income by use of the bank deposits method. We find that respondent's use of such method is justified because there was no evidence that adequate records were maintained by either business. [20]Sec. 446(b). The use of the bank deposits method for computing income has long been sanctioned by the courts. Goe v. Commissioner,198 F. 2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court, cert. denied, 344 U.S. 897 (1952); Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F. 2d 2 (6th Cir. 1977). *306 Respondent's N and B and City Leasing adjustments set forth in the notices of deficiency are presumptively correct and, therefore, the burden is upon petitioners to prove otherwise. Petitioners, however, have failed to come forward with sufficient credible evidence to satisfy their burden of proof and, consequently, we uphold respondent's N and B and City Leasing adjustments for 1968 and 1969. Issue 2: Innocent Spouse
Since we have upheld respondent's deficiency determinations, we consider petitioner's argument that Mary Ballard was an "innocent spouse" and, therefore, should be relieved or liability for 1969 and 1970 under section 6013(e). Section 6013(e)(1) provides that: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In General. Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is *307 attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. All three of these elements must be proven by the petitioning spouse in order to gain relief as an innocent spouse. Quinn v. Commissioner,524 F. 2d 617, 626 (7th Cir. 1975); Estate of Jackson v. Commissioner,72 T.C. 356, 360 (1979); Galliher v. Commissioner,62 T.C. 760, 761 (1974). For the following reasons we find that petitioners *308 have not established that Mary Ballard satisfied all three elements of section 6013(e)(1). Mary Ballard testified that during 1969 and 1970 she was aware that her husband was in the scrap iron and auto parts business. Indeed, her endorsement appears on some of the checks issued to Ballard Iron and Metal from various customers. Moreover, Mary Ballard testified that petitioner would sometimes give her these checks when she was short of cash and needed money to pay bills. She also identified her signature on the 1969 and 1970 joint returns which petitioners' filed with the Internal Revenue Service. Nevertheless, there is no mention whatsoever of Ballard Iron and Metal on either of these returns. We think that Mary Ballard's knowledge of petitioner's scrap iron and auto parts business and her receipt of some checks therefrom show that she knew or should have known that Ballard Iron and Metal income was omitted on their 1969 and 1970 joint returns. See Sonnenborn v. Commissioner,57 T.C. 373, 381-382 (1971). In any event, petitioners have failed to establish that Mary Ballard did not benefit from omitting the Ballard Iron and Metal income on their 1969 and 1970 returns, *309 and that she had no reason to know of such omitted income. Thus, we hold that Mary Ballard is not entitled to relief as an innocent spouse. Issue 3 and 4: Addition to Tax and Statute of Limitations
Respondent determined that part of petitioner's underpayment of tax for each of the years at issue was due to fraud and, therefore, claims that the section 6653(b) fraud addition to tax should be imposed. [21] Petitioner denies that any underpayment of tax was due to fraud. For the reasons set forth below, we hold for respondent on this issue. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976). Respondent has the burden of proving fraud for each year that it is alleged by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Cefalu v. Commissioner,276 F. 2d 122, 128 (5th Cir. 1960); Beaver v. Commissioner,55 T.C. 85, 92 (1970). *310 The taxpayer must be shown to have acted with the specific intent to evade a tax believed to be owing. Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941); Estate of Temple v. Commissioner,67 T.C. 143, 159 (1976). Since direct evidence of fraud is seldom available, respondent may meet his burden of proof through circumstantial evidence. Brountas v. Commissioner,73 T.C. 491, 587 (1979); Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978). A taxpayer's failure to satisfy his burden of proof as to the deficiency determined by respondent does not, however, constitute proof of fraud. George v. Commissioner,338 F. 2d 221, 223 (1st Cir. 1964); Pigman v. Commissioner,31 T.C. 356, 370 (1958). We have found that petitioner failed to report substantial amounts of income and net profits from Ballard Iron and Metal over a period of three years. We based this finding not on the presumptive correctness of respondent's deficiency determination, but on the substantial evidence contained in the record and discussed supra.
Petitioner contends that even if we find that he *311 had additional income than he reported during the years in issue, respondent has not proved fraud by clear and convincing evidence. We disagree. It is well established that a consistent failure to report substantial amounts of income over a number of years is effective evidence of fraudulent intent. Cromacki v. Commissioner,361 F. 2d 727 (7th Cir. 1966), affg. a Memorandum Opinion of this Court; Schwarzkopf v. Commissioner,246 F. 2d 731 (3rd Cir. 1957), affg. a Memorandum Opinion of this Court; Romer v. Commissioner,28 T.C. 1228 (1957). Petitioner failed to report the rental income he received from Cillo on his 1968 return; he also claimed a depreciation deduction on a truck that had been totally destroyed by a fire during that year, while not reporting on such return that he actually had a gain on the involuntary conversion due to the receipt of insurance proceeds in excess of his adjusted basis in the truck. In addition, petitioner's omission *312 of any reference to Ballard Iron and Metal on his 1969 and 1970 returns is further evidence of an intent to fraudulently conceal income. Boschma v. Commissioner,37 F. 2d 863 (6th Cir. 1967), affg. a Memorandum Opinion of this Court; Greenfield v. Commissioner,165 F. 2d 318 (4th Cir. 1947), affg. a Memorandum Opinion of this Court; Parsons v. Commissioner,43 T.C. 378 (1964). The fact that petitioner failed to maintain adequate records with respect to his various businesses is further evidence to support a finding of fraudulent intent to evade taxes. Woodham v. Commissioner,256 F. 2d 201 (5th Cir. 1958), affg. a Memorandum Opinion of this Court; Parsons v. Commissioner,supra.Consequently, notwithstanding petitioner's argument to the contrary, we hold that respondent established that petitioner is liable for the fraud addition to tax for all years in issue. [22]
*313 Having found that petitioner filed false and fraudulent returns for all years in issue with the intent to evade taxes, respondent's notices of deficiency were clearly not barred by the statute of limitations. See sec. 6501(c)(1) and (2). Due to respondent's complete concession with respect to petitioner's 1967 taxable year, Decisions will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue.↩
2. With respect to docket No. 5051-76, respondent conceded at trial that petitioners are not liable for the deficiency or addition to tax which he had originally determined for 1967, and that petitioner Mary Ballard is not liable for any additions to tax for 1969 and 1970.↩
3. Petitioner purchased this truck for $3,600 in February of 1966, and he had already claimed a total of $1,650 in depreciation with respect to it in prior years (i.e., 1966 and 1967). Thus, petitioner's adjusted basis in the truck at the time of the fire was $1,950 calculated as follows: $3,600 (cost of truck) less $1,650 (prior years' depreciation). See secs. 1011, 1012, and 1016. ↩
4. $2,100 insurance proceeds (amount realized) - $1,950 (adjusted basis) = $150 gain recognized. See secs. 1001, 1011, 1016, and 1231. ↩
5. On the Schedule C (Form 1040) attached to petitioner's 1968 income tax return, he calculated this depreciation deduction by applying the straight line method of depreciation and stating that the 1966 Chevrolet truck had a useful life of four years. Respondent disallowed this deduction and, at trial, petitioner conceded that such deduction was not allowable.↩
6. Six of the 98 checks were payable to either N and B Leasing and Drayage Co. or to City Leasing Co., both of which were truck leasing businesses carried on by petitioner. The record indicates, however, that these six checks were really issued in payment for auto parts sold by Ballard Iron and Metal.↩
7. The record does not conclusively establish the sources for the remaining $10,899.18 ($37,217.56 - [$24,823.38 + $1,495.00]) of N and B's deposits at the Bremen Bank. Due to the lack of adequate business records supplied by petitioners, respondent computed petitioner's income from N and B by applying a bank deposits method whereby he considered the entire amount of the deposits into a particular checking account and then he attempted to eliminate from such deposits any nontaxable items. Thus, respondent has considered all but $1,495 of the deposits at the Bremen Bank as N and B income during 1968.↩
8. The Metropolitan Towing Company was a towing business which petitioner purchased and began operating during 1970.↩
9. The grand jury indictment upon which petitioner's conviction was based, charged petitioner with reporting gross income from wages in the amount of $10,407 for 1969, even though he "* * * knew and believed, he [had] received substantial income in addition to that [amount]" in violation of section 7206(1). [Emphasis added.] This indictment also contained a second count which charged petitioner with being in violation of section 7206(1) with respect to 1970. A jury convicted petitioner on both counts and the United States District Court for the Eastern District of Missouri, entered judgment accordingly. Petitioner appealed his conviction to the United States Court of Appeals for the Eighth Circuit which affirmed his conviction with respect to 1969, but reversed and remanded his conviction with respect to 1970 because the district court failed to make a certain instruction to the jury. See United States v. Ballard,535 F. 2d 400 (8th Cir. 1976), cert. denied 429 U.S. 918↩ (1977). Subsequent to the remand, the government dismissed its criminal case against petitioner with respect to 1970.
10. Petitioner admitted at the trial of this case that he received $330 of commission income from the Wolff Motor Company during 1969. ↩
11. Witnesses at the criminal trial who had identified checks issued to City Leasing testified that the checks represented a payment of the total charge for rental of the tractor-trailer and use of the driver, out of which petitioner would have to payf the driver and such operating expenses as gasoline, maintenance, insurance, upkeep, and other items.↩
12. At trial, petitioner conceded all three of the items which make up the 1968 Ballard Iron and Metal adjustment.↩
13. This adjustment was the result of respondent's determination that petitioner claimed a $360.03 deduction for property taxes on his 1968 return even though he only paid $201.29 in such taxes during that year. Petitioner presented no evidence on this issue and, since we have concluded, infra, that petitioner underreported his income for 1968 with the fraudulent intent to evade taxes, we need not consider further the property tax issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure; sec. 6501(c) (1), (2)↩.
14. Our holding is based on the fact that petitioner conceded the three items which make up the 1968 Ballard Iron and Metal adjustment, and the fact that petitioner has failed to disprove respondent's other adjustments for that year.↩
15. Petitioners have given unconvincing explanations for their failure to file a Schedule C for Ballard Iron and Metal with respect to 1969, notwithstanding their allegation that their business losses exceeded their business income.↩
16. We note that in Bolton v. Commissioner,T.C. Memo. 1975-373↩, we approved the use of the specific item method of income reconstruction with respect to a taxpayer who failed to report any income from a scrap metal business.
17. In the stipulation of facts submitted by the parties, petitioner refused to acknowledge the authenticity of the endorsement on many of the 1969 and 1970 auto parts receipts, but at trial petitioner acknowledged the authenticity of the endorsement appearing on several of them. Nevertheless, petitioner still denies that he received and endorsed some of the checks which make up the 1969 and 1970 auto parts receipts. We have examined, however, petitioner's handwriting with the endorsements appearing on the disputed checks and we believe that all but a few of such endorsements were written by petitioner. Since petitioner did admit at trial that he would sometimes send one of his employees to cash checks at the gasoline service station operated by Gilbert L. Burpo, we think that the few checks which were not endorsed by petitioner were signed by his employees. We do not think these few checks were signed by persons not authorized to do so because petitioner testified that he never had occasion to report anyone to the police for stealing checks, nor did he ever fire an employee for suspected theft of a check.↩
18. Although the books and records of Krey reveal that petitioner paid $2,475 to Krey in 1969, respondent attributed $675 of such funds to City Leasing, another business of petitioner's which made use of the rental property. We note that petitioners have not expressed any disagreement with respect to respondent's apportionment of the rental expense deduction between Ballard Iron and Metal and City Leasing.↩
19. In addition to expenses for depreciation, rent, and cost of goods sold, respondent allowed some other miscellaneous expenses.↩
20. Petitioner testified that he had kept many of his business records in the brick building located on the property he rented from Krey at 3901 North Broadway. Petitioner stated that due to a fire that occurred in this building his records were destroyed. We find, however, petitioner's testimony to be unconvincing. In the first place, petitioner was very vague about the date of the alleged fire; he testified that it could have occurred anytime during November or December of 1968, or January or February of 1969. Secondly, petitioner failed to produce any business records for 1970, which would have given some credence to his claim that adequate and complete business records were at some point kept and maintained. Thirdly, Cillo who rented the property at 3901 North Broadway (except for the brick building) during such four month period, and who was there on a daily basis, testified that he did not observe, know of, or hear anything about a fire occurring in the brick building. Furthermore, with respect to N and B, petitioner testified that he had no knowledge that complete records were kept which would show the partnership's total receipts and disbursements. Finally, petitioner's failure to produce any business records for 1970, the year following the alleged fire, causes us to doubt that petitioner's inability to produce records for any of the years in issue was due to anything other than inadequate recordkeeping.↩
21. Respondent has determined that petitioner Mary Ballard is not liable for the fraud addition to tax.↩
22. While we find that the various indicia of fraud discussed infra, are sufficient to establish that petitioner filed false and fraudulent returns for 1968, 1969, and 1970 with the intent to evade taxes, we note that independent of those indicia, petitioner is collaterally estopped from denying that he filed a fraudulent return for 19699 The collateral estoppel is based on petitioner's criminal conviction for willfully making and subscribing a false income tax return for 1969 by failing to report that he received substantial income in addition to what was shown thereon in violation of section 7206(1). See, Goodwin v. Commissioner,73 T.C. 215 (1979); Considine v. Commissioner,68 T.C. 52↩ (1977). We further note that the government's evidence which led to petitioner's conviction included unreported Ballard Iron and Metal receipts.