**UNITED STATES of America, Appellee,**

v.

**David H. BELL, Appellant.**

**No. 84–1069.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1984.

Decided May 23, 1984.

---

Thomas E. Dittmeier, U.S. Atty., Charles A. Shaw, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Taylor, Schumaier & Sluggett, W. Morris Taylor, Brian A. McKinsey, St. Louis, Mo., for appellant.

Before HEANEY, BRIGHT and JOHN R. GIBSON, Circuit Judges.

PER CURIAM.

David H. Bell appeals his conviction on three counts of willful failure to file income tax returns for the years 1978, 1979 and 1980 in violation of 26 U.S.C. § 7203 (1982). Bell argues that the evidence was insufficient to support the verdict and that the Internal Revenue Service's (IRS) alleged violations of the Privacy Act of 1974, specifically 5 U.S.C. § 552a(e)(3) (1982), constitute grounds for reversing his conviction. We affirm.

Bell received a jury trial before the Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri. Upon his conviction, Bell was sentenced to four months imprisonment and ordered to pay the costs of prosecution for Count I. The magistrate suspended imposition of sentence on Counts II and III and placed Bell on probation for five years. Bell appealed his conviction to the district court as provided by 18 U.S.C. § 3402 (1982). On December 28, 1983, the district court affirmed Bell's conviction. This appeal followed.

The Tax Code requires an individual to file a tax return if his or her gross income equals or exceeds a specified amount. *See* 26 U.S.C. § 6012 (1982). For the taxable year 1978, that amount was $4,700 for individuals filing joint returns. For the years 1979 and 1980, that amount was $5,400 for those individuals. Willful failure to file a return subjects a person with gross income above the statutory limit to criminal prosecution under 26 U.S.C. § 7203. The thrust of Bell's first allegation of error is that the government failed to prove his gross incomes in 1978, 1979 and 1980 were such that he had a duty to file income tax returns. We disagree.

Bell is the sole proprietor of a business which provides daily reports on the performance of race horses, or "tip sheets," to aid on-track bettors in handicapping races primarily at Fairmont Park, Illinois and Oaklawn Park, Arkansas. On June 23, 1981, special agents of the IRS interviewed Bell at his Missouri residence. After being advised of his constitutional rights, Bell admitted that he had not filed federal tax returns for the years 1978, 1979 or 1980. He stated that he was aware of his obligation to file such returns, but gave various reasons for his failure to do so. On August 27, 1981, Bell filed his income tax returns for the years in question. These returns reflected gross incomes of $52,677 for 1978; $68,102 for 1979; and $92,981 for 1980. Bell claimed adjusted gross incomes for these years of $30,410 for 1978; $35,071 for 1979; and $45,973 for 1980. In November of 1981, the IRS verified these returns with other financial records obtained from Bell. The IRS concluded Bell's returns were "substantially correct."

Aside from Bell's tax returns, the government presented testimony to substantiate the level of Bell's income. Cecci Clay, who managed the tip sheet concession at the Oaklawn Park racetrack, testified that Bell received $15,656 in sales receipts from her concession in 1979, and $33,215 in 1980. She had no record of Bell's receipts for 1978. Paul O'Brien, who had printed Bell's tip sheets since 1977, testified that he had supplied Bell with approximately 2,175 sheets per week during the horse racing season and approximately 1,600 sheets per week in the harness racing season. These sheets were sold for a dollar apiece. Kimberly Rolfe testified she sold tip sheets for Bell in one of the three areas where this was done at Fairmont Park. Carl Downey, the controller for Fairmont Park, testified that Bell rented space there to sell his tip sheets in 1978, 1979 and 1980. Finally, Nick Milam, District Auditing Manager with the State of Arkansas Revenue Division, testified that for Arkansas state sales tax purposes, Bell had reported sales of $8,133 in 1978, $36,500 in 1979, and $75,000 in 1980.

Bell asserts the government's case against him must fail because there was insufficient independent evidence to corroborate the income statements on his tax returns. Bell relies on *United States v. Smith*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). In *Smith*, the Supreme Court held that the government could not prove an essential element of the crime of tax evasion—understatement of income—through only the uncorroborated extra-judicial admissions of the accused. The Court based this holding on the general rule that an accused may not be convicted on his own uncorroborated confession. The defendant in *Smith* had supplied the government with a statement of his net worth at the beginning of the prosecution period which did not account for his net worth increases during the prosecution period. The Court noted that either direct evidence of the defendant's net worth or indirect evidence that he had understated his income could serve to corroborate the defendant's statements.

 The government's burden of proof in a failure to file case is less than in a tax evasion case. In the latter, the prosecution must show the taxpayer's receipt of taxable income. *United States v. Ballard*, 535 F.2d 400, 405 (8th Cir.1976). Here, evidence of unexplained receipts shifts to the taxpayer the burden of coming forward with the amount of offsetting expenses. *See id.; Siravo v. United States*, 377 F.2d 469, 473–474 (1st Cir.1967). Thus, the government's independent proof of Bell's gross receipts may have been enough, standing alone, to make a submissible case for the jury. We need not reach that question, however, because the issue here is only whether the testimony concerning Bell's gross receipts at some of his concessions provided enough corroboration to render the income statements on his late-filed tax returns admissible. We agree with the district court that the corroboration was sufficient. We therefore conclude the evidence taken as a whole and viewed in the light most favorable to the government is sufficient to sustain Bell's conviction.

Bell next contends his conviction should be reversed because the information supplied by the IRS in conjunction with the distribution of tax forms fails to adhere to the requirements of the Privacy Act, in particular 5 U.S.C. § 552a(e)(3). That section requires government agencies which keep records on individuals to inform them when gathering information of the basis of the agency's authority; the purposes for which the information is intended to be used; the routine uses which may be made of the information; and the effects, if any, of not providing all or any part of the requested information. Bell focuses on the last requirement, arguing the IRS's failure to inform him of the criminal penalties that could result from his failure to file prejudiced him. The district court did not resolve this issue because it held that Bell waived this argument by his failure to raise it at trial before the magistrate.

Even if we agree with Bell that the issue was sufficiently raised at trial, it cannot be a basis for reversing his conviction. We have considered this Privacy Act argument in other appeals of convictions for willful failure to file tax returns and rejected it as meritless. *United States v. Wilber,* 696 F.2d 79, 80 (8th Cir.1982); *United States v. Karsky,* 610 F.2d 548, 549 n. 2 (8th Cir. 1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1058, 62 L.Ed.2d 781 (1980). It is enough that the IRS booklets for the years in question state that the information given may be turned over to the Department of Justice; the Privacy Act does not require notice of the specific criminal penalty which may be imposed. *United States v. Wilber, supra,* 696 F.2d at 80; *United States v. Rickman,* 638 F.2d 182, 183 (10th Cir.1980) (Privacy Act notice in IRS booklets for 1975 and 1976 are adequate); *see United States v. Annunziato,* 643 F.2d 676, 678 (9th Cir.), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 979 (1981), (citing *Rickman* and holding that the Privacy Act notice in W-4 statements is sufficient); *Field v. Brown,* 610 F.2d 981, 987–988 (D.C.Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 792 (1979) (regulations which warn that the Department of Justice would be notified if information was not provided satisfied the Privacy Act).

Accordingly, the judgment of the district court is affirmed.