**UNITED STATES of America, Plaintiff,**

**v.**

**Wayne WOJTAS, Defendant.**

**No. 85 CR 48.**

United States District Court,
N.D. Illinois, E.D.

May 10, 1985.

Gillum Ferguson, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Andrew B. Spiegel, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Wayne Wojtas ("Wojtas") has moved to dismiss the indictment in this case, which charges Wojtas with three counts of willful failure to file income tax returns in violation of 26 U.S.C. § 7203. Wojtas' premise is that the Sixteenth Amendment was not validly ratified, so that the present Internal Revenue Code (the "Code") is a nullity and any indictment brought under the Code is a fortiori invalid.[1] Wojtas seeks an

---

**1.** This marks the latest line of legal attack launched by "tax protesters" (as they are often described by others) or "tax patriots" (as they view themselves).

evidentiary hearing to deal with his submissions in that respect. For the reasons stated in this memorandum opinion and order, no evidentiary hearing is required and the motion is denied.

In support of Wojtas' motion, his counsel Andrew Spiegel, Esq. ("Spiegel") submits not only the customary supporting memorandum[2] but three large volumes. They comprise "The Law That Never Was—Vol. 1" (subtitled "The fraud of the 16th Amendment and personal Income Tax"), written by Bill Benson and M.J. "Red" Beckman and published this year by Constitutional Research Associates, and two looseleaf binders containing the documents referred to in the Benson-Beckman volume. This Court has read all the introductory and concluding materials in the Benson-Beckman volume, particularly including the February 15, 1913 memorandum (the "Opinion") by the Solicitor of the Department of State (that Department's general counsel, with responsibility for furnishing legal opinions to the Secretary of State)—a document characterized by Messrs. Benson and Beckman as the "Golden Key" that "unlocks a Pandora's box of criminal fraud perpetrated by public servants, who betrayed the trust of their masters." In addition this Court has sampled, but has not read all of, the materials dealing with the actions taken within the various states in the ratification process.[3]

Spiegel argues for Wojtas that Secretary of State Philander Knox committed fraud—a violation of the criminal statutes of the United States—in certifying the adoption of the Sixteenth Amendment. That, counsel says, distinguishes the authorities on which the United States seeks to rely in opposing his motion.

But Wojtas' counsel is no different from most persons who essay revisionist history: He prefers to ignore what he cannot ex-

plain away. Article V of the Constitution reads in relevant part:

> The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution ... which ... shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States....

And the few cases that have been asked to deal with issues comparable to the one now tendered to this Court have uniformly held questions as to compliance with Article V's requirements are within the sole province of Congress and *not* the courts—in the language that has come to characterize such issues, they are "political" (that is, nonjusticiable) questions.

*Leser v. Garnett*, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505 (1922) dealt with several attacks on the Nineteenth Amendment. For current purposes the relevant contention was the claimed invalidity of two states' ratifications "because adopted in violation of the rules of legislative procedure prevailing in the respective states" (*id.* at 137, 42 S.Ct. at 218). Speaking for a unanimous Supreme Court, Justice Brandeis first referred to the fact two other states had since ratified the Amendment but then went on to say (*id.*):

> But a broader answer should be given to the contention. The proclamation by the Secretary certified that from official documents on file in the Department of State it appeared that the proposed amendment was ratified by the Legislatures of 36 states, and that it "has become valid to all intents and purposes as a part of the Constitution of the United States." As the Legislatures of Tennessee and of West Virginia had power to adopt the resolutions of ratification, offi-

---

**2.** Wojtas' motion is obviously one prepared for another case, with Wojtas' name inserted in place of the original defendant's at the appropriate places in the motion—thus demonstrating the utility of white-out compounds. Spiegel regularly represents persons attacking the Sixteenth Amendment and the Code on various

grounds and gets a special mention in the Introduction to the Benson-Beckman book referred to in the text (pages xv–xvii).

**3.** As the substantive discussion in this opinion will reflect, no detailed review of those materials is either necessary or appropriate.

cial notice to the Secretary, duly authenticated, that they had done so, was conclusive upon him, and, being certified to by his proclamation, is conclusive upon the courts. The rule declared in *Field v. Clark*, 143 U.S. 649, 669–673, 12 Sup.Ct. 495, 36 L.Ed. 294 [ (1892) ], is applicable here. See, also *Harwood v. Wentworth*, 162 U.S. 547, 562, 16 Sup.Ct. 890, 40 L.Ed. 1069 [ (1896) ].

*Field* too had rejected the idea of going behind an official attestation, this time in the context of congressional legislation. As *Field*, 143 U.S. at 672, 12 S.Ct. at 497 said in a part of the opinion cited approvingly in *Leser*:

The signing by the Speaker of the House of Representatives, and by the President of the Senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed Congress. It is a declaration by the two houses, through their presiding officers, to the President, that a bill, thus attested, has received, in due form, the sanction of the legislative branch of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him. And when a bill, thus attested, receives his approval, and is deposited in the public archives, its authentication as a bill that has passed Congress should be deemed complete and unimpeachable. As the President has no authority to approve a bill not passed by Congress, an enrolled act in the custody of the Secretary of State, and having the official attestations of the Speaker of the House of Representatives, of the President of the Senate, and of the President of the United States, carries, on its face, a solemn assurance by the legislative and executive departments of the government, charged, respectively, with the duty of enacting and executing the laws, that it was passed by Congress. The respect due to coequal and independent departments requires the judicial department to act upon that assurance, and to accept, as having passed Congress, all bills authen-

ticated in the manner stated: leaving the courts to determine, when the question properly arises, whether the act, so authenticated, is in conformity with the Constitution.

Wojtas' counsel simply refuses to recognize the impact of *Field* (let alone *Leser*) on his arguments. One of his contentions is that the "Golden Key" Solicitor's opinion improperly relied on the presumptive regularity of certification—on the idea that because a state legislature can only approve or disapprove a proposed constitutional amendment, it must necessarily be presumed "in the absence of an express stipulation to the contrary, that a legislature did not intend to do something that it had not the power to do, but rather that it intended to do something that it had the power to do, namely, where its action has been affirmative, to ratify the amendment proposed by Congress" (Opinion at 15, Benson-Beckman at 19). That was the predicate for the conclusion of the Solicitor, obviously relied on by Secretary Knox in his own certification of the Sixteenth Amendment, that changes of wording or capitalization in "merely reciting the proposed amendment" did not impair the states' ratification. But if that line of analysis is a kind of bootstrap-lifting, as Wojtas' counsel would have it, it mirrors precisely the kind of reasoning the Supreme Court itself has used as the ground for the courts' non-inquiry into matters committed by Article V of the Constitution to another branch of government.

Though the United States has cited other more hoary authority on the "political" question" issue, only one other Supreme Court decision need be mentioned. *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) fell one vote short of a determination that *everything* in Article V is for Congress alone (and not the courts) to decide. As the concurring opinion by Justice Black (for himself and Justices Roberts, Frankfurter and Douglas) said (*id.* at 459, 59 S.Ct. at 984):

No such division between the political and judicial branches of the government is made by Article V which grants power

over the amending of the Constitution to Congress alone. Undivided control of that process has been given by the Article exclusively and completely to Congress. The process itself is "political" in its entirety, from submission until an amendment becomes part of the Constitution, and is not subject to judicial guidance, control or interference at any point.

Even though the majority opinion did not go that final step, Justice Black's concurring opinion accurately characterized the Court's opinion this way in the course of explaining why the four-judge concurrence believed the Court had not gone far enough (*id.*, emphasis added):

> *If Congressional determination that an amendment has been completed and become a part of the Constitution is final and removed from examination by the courts, as the Court's present opinion recognizes,* surely the steps leading to that condition must be subject to the scrutiny, control and appraisal of none save the Congress, the body having exclusive power to make that final determination.

That is indeed an accurate reading of the Court's opinion and decision in *Coleman*. Although the Court did indicate some possible room for minimal judicial scrutiny of one narrow Article V question (see *id.* at 446–47, 59 S.Ct. at 978–79, reflecting an equal division on whether that question "presents a justiciable controversy, or a question which is political in its nature and hence not justiciable"), that division clearly did *not* extend to the kind of attack dealt with thereafter by the Court (*id.* at 447–56, 59 S.Ct. at 979–83)—an attack comparable to the one launched by Wojtas here. Though the Court did not announce as general a principle as the concurring Justices would have preferred, the Court's statements (*id.* at 450–51, 59 S.Ct. at 980–81) as to the "political question" nature of the issues it dealt with have equal force for the current question. Here the question is indeed whether (in the language of the *Coleman* concurrence) "an amendment has

been completed and become a part of the Constitution," and as to that the "Congressional determination ... is final and removed from examination by the courts."

Despite Wojtas' counsel's efforts to distinguish away controlling Supreme Court authority, the *principles* announced in *Leser, Field* and *Coleman* are dispositive. Secretary Knox's certification and Congress' determination as to the adoption of the Sixteenth Amendment are not judicially reviewable. Because the kind of evidence offered by Wojtas relates to a nonjusticiable issue under those authorities, no evidentiary hearing is required. Wojtas' motion to dismiss is denied.[4]

### Appendix

One kind of extraordinary irony is posed by the motion dealt with in the body of this opinion. Wojtas' counsel Spiegel, apparently imbued with the same fervor that marks his clients' beliefs, makes a number of references to asserted misrepresentations and false representations by government counsel (in that respect Spiegel would do well to read ABA Code of Professional Responsibility EC 7–37). Yet he fails to recognize the lack of candor in one of his own fundamental contentions, on which it is worth spending a moment.

As the opinion reflects, the linchpin of Spiegel's motion is its argument that Secretary Knox committed fraud in certifying the adoption of the Sixteenth Amendment. In turn that depends on the proposition that the Solicitor to the State Department, who was asked for an opinion (the "Golden Key"), gave one—but that Secretary Knox could not reasonably have relied on that opinion. Spiegel's R.Mem. 9 captions its argument in that respect:

C. Secretary Knox And His Staff Violated A Known Legal Duty By Their Fraudulent Certification

Spiegel then charges (*id.* at 11):

D. Secretary Knox Violated The Criminal Laws Of The United States,

---

4. See Appendix.

In support of that charge he urges (*id.* at 12, emphasis added):

> Based upon the records Wojtas has obtained, Secretary Knox should never have issued his fraudulent certification. He knew *or should have known* that not one single state properly ratified the proposed amendment. Yet he did so in violation of the criminal laws of the United States.

"Should have known" is of course a statement of an *objective* test of fraud—of the idea a person's knowledge, made relevant for criminal responsibility by the government's need to prove willfulness,[1] is to be measured by the *reasonableness* of the person's belief, not simply whether such belief is honestly held. But when the *government* seeks to urge the same objective standard against Spiegel's own clients in these very tax fraud cases, Spiegel resists with all the force at his command.[2]

 As it happens, this Court believes an objective standard of "reasonable belief" is incorrect—that teachings of the Supreme Court and a proper reading of the mens rea concept are accurately reflected by the First Circuit's opinion in *United States v. Aitken,* 755 F.2d 188 (1st Cir.1985) and not by the opinion of our Court of Appeals in *United States v. Moore,* 627 F.2d 830, 833 (7th Cir.1980), *cert. denied,* 450 U.S. 916

[101 S.Ct. 1360, 67 L.Ed.2d 342] (1981) (and see *United States v. Thibodeaux,* 758 F.2d 199 [201 n. 2] (7th Cir.1985)). But the point here is not whether counsel is *right* in contending that the proper test for his clients' criminal intent is a subjective one, but rather whether counsel is *forthright* in simultaneously urging a sharply different standard for "criminality" of the longdeceased former Secretary of State.

This is not a case where "foolish consistency is the hobgoblin of small minds." Counsel's responsibilities to the adversary system deserve better.

---

1. Federal Criminal Jury Instructions of the Seventh Circuit 6.03, prepared by the Committee on Federal Criminal Jury Instructions of the Seventh Circuit, deals with the circumstances under which an instruction defining "willfully" should or should not be given. Accurately drawing on *United States v. Pomponio,* 429 U.S. 10, 12 [97 S.Ct. 22, 23, 50 L.Ed.2d 12] (1976) and the earlier definition in *United States v. Bishop,* 412 U.S. 346, 360 [93 S.Ct. 2008, 2017, 36 L.Ed.2d 941] (1973), the Committee said "willful" should be defined in tax prosecutions this way (note the direct parallel to Spiegel's caption C quoted in this Appendix):

 > An act is done "willfully" if done voluntarily and intentionally with the purpose of avoiding a known legal duty.

 What is "known" necessarily depends on a person's state of mind, and it is here that the debate as to objective v. subjective states of mind arises. Indeed it is misleading to call that a "debate," for *Aitken* (cited in the text) discloses the contest is rather one between our Court of Appeals on one side and the rest of the legal world on the other. This entire subject is one this Court discussed at some length as a speaker at the recent (April 16, 1985) Federal Bar Association seminar in Chicago.

2. This Court has in the past had another tax protester-cum-patriot jury trial in whuch Spiegel represented the defendant. During the jury instruction conference Spiegel objected strenuously to the Assistant United States Attorney's effort to inject a statement of "reasonable belief" into the jury instruction on "willfulness." This Court, which has always agreed with that position, had already announced its intention to strike that provision from the government's tendered instruction, and it therefore adhered to that position in Spiegel's (and his client's) favor. In like manner, in the present case Spiegel has tendered a photocopy of *Aitken* (cited in the text), obviously intending to invoke it on Wojtas' behalf.