**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Eugene WITVOET,**
**Defendant-Appellant.**

**No. 84–2695.**

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1985.

Decided July 10, 1985.

James D. O'Connell, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Andrew B. Spiegel, Chicago, Ill., for defendant-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and PECK, Senior Circuit Judge.[1]

JOHN W. PECK, Senior Circuit Judge.

Appellant Eugene Witvoet was convicted, after a jury trial, for willful failure to file a 1981 federal income tax return, in violation of 26 U.S.C. § 7203. He now appeals his conviction to this court. We affirm.

I.

Witvoet became acquainted, in 1978, with members of the tax protest movement. The tax protesters Witvoet met represented themselves as experts, and claimed that

---

**1.** Honorable John W. Peck of the Sixth Circuit, sitting by designation.

payment of income taxes is a purely voluntary act. One of these "experts" even stated that it is illegal to pay income tax. The tax protesters supported their assertions by highly selective and misleading quotations from Supreme Court opinions and Internal Revenue Service regulations.

Witvoet and his wife were impressed by what they heard, and were inclined to credit the experts' views. They undertook no independent investigation and solicited no opinion from persons outside the tax protest movement, in spite of the fact that they had reason to doubt the authenticity of their mentors' credentials as experts. (Paul Bell, for example, the tax protester who had the greatest impact on Witvoet, called himself a "C.P.A." in his promotional literature. Witvoet knew that the initials stood, not for "certified public accountant," but for "citizens' protection agent," a title Bell apparently gave himself.)

Witvoet then decided not to pay taxes. The motives for his decision were mixed. Several of the reasons he gave for this decision amounted to the fact that he did not particularly like paying taxes, which is a not uncommon aversion. He also inclined to the belief that it was illegal to pay taxes, though he was not certain on this point, and he thought that his membership in a so-called "religious order" formed by Paul Bell gave him tax-exempt status.

Late in 1979, Witvoet submitted to his employer a W–4 form claiming fifty-three allowances. He did so to avoid having income tax withheld from his paycheck, even though his employer warned Witvoet that his submission of the form might constitute perjury. He filed no tax returns for the years 1979–82. In late 1983, Witvoet was indicted for failure to file 1980 and 1981 income tax returns. He attempted to call Bell, who had assured him that his actions would not result in legal liability and that he would arrange for legal assistance if Witvoet needed it. Witvoet's call was answered by a secretary, who told him that Bell was in prison. This fact, together with the indictment against him, apparently gave Witvoet pause, and he decided to file the tax returns for 1979–82. He testified at trial that he did so in part because he believed it would make a good impression on the jury when he was tried. Ironically, it turned out that a refund was due Witvoet for 1979; he owed taxes for 1980, 1981, and 1982, and paid them. Witvoet was tried before a jury in the United States District Court for the Northern District of Illinois. The jury convicted him for failure to file the 1981 return, but acquitted him on the charge of failing to file the 1980 return. Witvoet then filed a motion for a judgment of acquittal on the 1981 count. The court denied the motion and sentenced Witvoet to a year in prison, whereupon Witvoet filed a timely appeal to this court.

## II.

■ Witvoet raises three issues on appeal. The first is whether a court can "sustain a jury's verdict which is internally inconsistent," which he alleges this verdict to have been, since there was, in his opinion, no more evidence of his guilt on the 1981 count for which he was convicted than on the 1980 count for which he was acquitted. The Supreme Court has answered this question during the pendency of Witvoet's appeal. In *United States v. Powell,* ── U.S. ──, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Court held that "a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." *Id.* at 473, 479. *Powell* is dispositive of this issue.

■ Witvoet's second assignment of error is that the court gave an improper jury instruction on the nature of a defense based on a good faith misunderstanding of the law. The court instructed the jury:

A good faith misunderstanding of the law which the defendant is charged with violating is a defense if based on objectively reasonable grounds. However, mere disagreement with that law does not constitute good faith misunderstanding of the law, because it is the duty of all persons to obey the law whether or not they agree with it.

Witvoet argues that it was error for the court to instruct the jury that a good faith misunderstanding of the law must be objectively reasonable. However, he did not present this argument to the trial court, though he did object to two other aspects of the instruction. Federal Rule of Criminal Procedure 30 states, in relevant part:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Thus we cannot review this instruction unless it constitutes plain error within the meaning of Federal Rule of Criminal Procedure 52(b).

In *United States v. Moore*, 627 F.2d 830 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981), we held that "[t]he mistake of law defense is extremely limited and the mistake must be objectively reasonable." *Id.* at 833. Neither this court nor the Supreme Court has overruled *Moore*, and it stands as an expression of the law in the Seventh Circuit.[2] For a trial court within this circuit to give an instruction based on a recent ruling of this court is not plain error. The instruction to which Witvoet objects, then, was not plain error, and since he did not make an objection complying with the requirements of Federal Rule of Criminal Procedure 30, we shall not review it.

■ Witvoet argues, finally, that there was no substantial evidence to support the jury verdict.[3] Most of his argument on this point amounts to a recapitulation of his position that his conviction for failure to file the 1981 return was inconsistent with his acquittal on the charge of failing to file

his 1980 return. We have already addressed this contention, and we believe that the evidence, as summarized *supra,* was more than adequate to support his conviction.

The judgment of the district court is affirmed.

**2.** *Moore* indicated that the requirement that a mistake of law defense be based on an objectively reasonable mistake was followed at that time in other circuits. *See Moore, supra,* at 833, and cases cited therein. We reaffirmed our adherence to this requirement in *United States v. Anton,* 683 F.2d 1011, 1018 (7th Cir.1982).

**3.** We view the evidence, of course, in the light most favorable to the prosecution, as Witvoet acknowledges we must. Our standard of review

was stated by the Supreme Court in *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974):

The general rule of application is that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).