**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Horace E. BRESSLER,
Defendant-Appellant.**

**No. 84–2680.**

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1985.

Decided Aug. 27, 1985.

Supplemental Statement Sept. 6, 1985.

Alexander S. Vesselinovitch, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Jeffrey Shrom, Shrom & Halprin, Missoula, Mont., for defendant-appellant.

Before CUMMINGS, Chief Judge, ESCH-BACH, Circuit Judge, and CAMPBELL, Senior District Judge.*

CUMMINGS, Chief Judge.

Defendant Horace E. Bressler was convicted after a jury trial of two counts (Count One and Count Three) of willfully failing to file income tax returns for taxable years 1977 and 1978, in violation of 26 U.S.C. § 7203, and one count (Count Two) of willfully evading substantial tax liability for 1978, in violation of 26 U.S.C. § 7201. Defendant has timely appealed, and we affirm his conviction.

I

The defendant is a "tax protester," a member of a group of people who object to the payment of income tax. Evidence introduced at trial established that the defendant had substantial income from a variety of sources during the tax years at issue, 1977 and 1978. These sources included income from two insurance agencies with which the defendant was affiliated, and a number of rental properties. Russell Nimtz, an agent of the Internal Revenue Service ("IRS") and an expert in tax accounting, compiled a summary from the evidence presented at trial of the defendant's income and expenses in 1977 and 1978. According to this summary, the defendant received total gross income in 1977 of $102,871.86 and in 1978 of $150,578.07. Agent Nimtz computed defendant's taxable income in 1978 as $42,071.56.

In January 1981, the defendant transferred ten of his properties, including his own house, to his son Steven. He claimed he did so because they were "too much work" (Tr. 1121–1122). Each property was transferred for less than $100.

The government called witnesses to testify about various statements the defendant had made in public on the subject of income tax, for example at meetings he conducted at the Landmark Restaurant in Freeport, Illinois. Anne Fitzhenry, a reporter for the Freeport *Journal-Standard* newspaper, at-tended one of these meetings on February 1, 1983. During that meeting, as Ms. Fitzhenry reported in an article appearing in the *Journal-Standard* and in her testimony at trial, the defendant admitted he had not filed a tax return for thirteen years, that paying income taxes was voluntary, and that the American people were " 'dumb, dumb, dumb' " (Tr. 325) for filing tax returns. He also said that a person's chance of getting caught for failure to file tax returns was slim. He advocated several methods for avoiding income tax, including making oneself judgment-proof by transferring real property into a trust and by removing assets from banks. Eunice Lee, a member of a church that employed the defendant as a pastor, testified that the defendant advised the congregation's members to withdraw their money from the banks, convert it into silver, and bury it in their yards. He also told them that a dollar bill was not worth as much as a blank piece of paper.

The defendant testified in his own defense, during which he insisted that the filing of income tax returns was voluntary. He called a number of witnesses to testify to his good character, and to testify about the February 1, 1983, meeting at the Landmark Restaurant. Two of these witnesses conceded that the defendant had stated that he had not filed his income tax returns for thirteen years. Mr. Bressler was not represented by counsel at his trial, because he refused to be represented by court-appointed counsel and the trial court denied his request to be represented by someone who was not a licensed attorney. Nonetheless, the court did allow two lay persons to sit with Mr. Bressler at the counsel table to advise him during the course of the trial. The court also had a licensed attorney standing by throughout the trial to assist Bressler.

II

Defendant objects first to two jury instructions the court below read to the

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

jury. The first instruction informed the jury that "[t]he defendant was a person required by law to file a return for the calendar year in question, as that phrase is used in these instructions, if his gross income equaled or exceeded $4,700 in 1977 or $4,700 in 1978" (Tr. 1352). Mr. Bressler contends that this instruction directed a verdict on one element of the crime charged under Counts One and Three, failing to file income tax returns.

The defendant's argument fails because the instruction did not direct the jury to find any facts. Defendant was married in tax years 1977 and 1978, and therefore was legally obliged to file income tax returns if his gross income exceeded $4,700. Thus the instruction at issue properly and adequately stated the law, see *United States v. Loman*, 551 F.2d 164, 168 (7th Cir.1977), certiorari denied, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097, but let the jury determine what the defendant's gross income was. The trial court also instructed the jury that the accuracy of "certain schedules or summaries" that had been admitted into evidence "has been challenged. Thus, the original materials upon which the exhibits are based have also been admitted into evidence so that you may determine whether the schedules or summaries are accurate" (Tr. 1350). The court clearly and explicitly left it for the jury to determine whether Mr. Bressler had earned sufficient income to be required to file and whether he incurred substantial tax liability for tax year 1978. Consequently the case at bar is quite unlike *United States v. Goetz*, 746 F.2d 705, 707–708 (11th Cir. 1984), because the judge there instructed the jury both what the law was, and that the document filed by the defendant as a tax return did not meet the requirements of the law. The judge in the instant situation did not apply the facts to the law, leaving it entirely to the jury to determine what Mr. Bressler's gross income was and whether he had complied with the law.

Defendant next argues that the jury instruction on the "good faith" defense to willfulness was inadequate. The trial court instructed the jury that "[a] good faith misunderstanding of the law may negate willfulness if the misunderstanding is reasonable" (Tr. 1355). Mr. Bressler contends that this instruction misrepresents the law, because a misunderstanding need not be objectively reasonable to serve as a defense to willfulness. In oral argument before us defense counsel relied for the first time on *United States v. Aitken*, 755 F.2d 188 (1st Cir.1985), where the First Circuit declared "that the overwhelming weight of authority in the field of criminal prosecutions for failure to file tax returns and for tax evasion insists on a subjective standard for assessing wilfulness." *Id.* at 192. Consequently, that court held that the district court's " 'objectively reasonable' " instructions, given on the basis of our decision in *United States v. Moore*, 627 F.2d 830 (7th Cir.1980), certiorari denied, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981), were erroneous. *Id.* at 193. The issue of whether a good faith misunderstanding of the law must be reasonable, or whether an unreasonable misunderstanding sincerely held is sufficient, still appears to depend on objective reasonableness in this Circuit. *United States v. Witvoet*, 767 F.2d 338, 340 (7th Cir.1985) (misunderstanding must be objectively reasonable); *United States v. Anton*, 683 F.2d 1011, 1018 (7th Cir.1982) (same).[1]

The defendant did not advance his argument concerning objective and subjective reasonableness until oral argument before this Court. Therefore, we "cannot review this instruction unless it constitutes plain error within the meaning of Federal Rule of Criminal Procedure 52(b)." *United States v. Witvoet, supra,* at 340. *Witvoet* involved almost an identical situation: on appeal before this Court the defendant argued for the first time that an instruction

---

**1.** But compare *United States v. Dack*, 747 F.2d 1172, 1175 (7th Cir.1984), with *United States v. Walsh*, 627 F.2d 88, 93 (7th Cir.1980). We need not choose between the objective and subjective tests in this case because, as noted in the text, defendant did not advance below an argument in favor of the subjective test.

on the good faith defense requiring the misunderstanding to be "objectively reasonable" was erroneous. The Court held, on the strength of *United States v. Moore, supra,* that the instruction did not constitute plain error. *Id.* We agree that plain error has not been shown here.

■ We have previously observed that for a jury instruction to constitute plain error under Fed.R.Crim.P. 52(b), the reviewing court "must consider the entire trial record, * * * and discern whether the alleged error in the district court's charge had 'a probable impact on the jury's finding that the defendant was guilty.'" *United States v. Verkuilen,* 690 F.2d 648, 653 (7th Cir.1982) (quoting *United States v. Jackson,* 569 F.2d 1003, 1010 (7th Cir.1978), certiorari denied, 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137) (citations omitted). First of all, the district court properly instructed the jury that willfulness is a "voluntary and intentional violation of a known legal obligation" (Tr. 1355). No further instruction on good faith was even necessary. *Verkuilen,* 690 F.2d at 655. Second, the evidence clearly established that the defendant did not "misunderstand" the law at all. He was a sophisticated businessman with substantial real estate holdings who held meetings during which he advised the audience how to avoid their tax obligations. In particular, his remarks reported by Ms. Fitzhenry positing that the chances of getting caught for failing to file income tax returns were very slight indeed, his informing those present at the February 1, 1983, meeting that they should evade liability by making themselves judgment-proof and telling them how to do so, as well as his transferring a number of his properties (including his own house) to his son for a nominal sum, indicate that he had no good faith, bona fide misunderstanding of the law, either subjective or objective. Mr. Bressler has refused to file income tax returns and pay the amounts due not because he misunderstands the law, but because he disagrees with it. As the jury in the instant situation was properly instructed, disagreement with the law does not constitute a good faith defense sufficient to negate a finding of willfulness (Tr. 1355). Just as an individual who is required to register for the draft, but refuses to do so on grounds of conscience, is subject to prosecution, so one who refuses to file income tax returns and pay the tax owing is subject to prosecution, even though the tax protester believes the laws requiring the filing of income tax returns and the payment of income tax are unconstitutional.[2]

## III

■ Mr. Bressler also raises several evidentiary objections. Great deference is owed to the trial judge's exclusion of evidence under Fed.R.Evid. 403 as being more prejudicial than probative. *United States v. Serlin,* 707 F.2d 953, 959 (7th Cir.1983). The defendant argued that many of the remarks Ms. Fitzhenry attributed to him actually derived from a videotape shown at the meeting she attended. The district court excluded the videotape after review

**2.** The government suggests that the good faith instruction given by the judge below was correct, because it did not require that the misunderstanding be objectively reasonable. The government argues that the jury could have interpreted the instruction to include subjective reasonableness, and so account for the defendant's subjective intent. At first glance, this argument appears specious, given as lawyers are to read "reasonable" as meaning "objective," or what the ordinary person in the defendant's situation would believe, as opposed to what the defendant did in actuality believe. But if so, then qualifying the word "reasonable" with the requirement that a belief be "objectively reasonable" seems unnecessarily redundant. Jurors are lay persons, after all, not lawyers, so that the word "reasonable" does not "carry the same baggage" for them that it would for lawyers.

The reasonableness requirement is intended to give the jury a method by which they can distinguish between a bona fide misunderstanding of the law and obdurate refusal to acknowledge (present in so many tax protester cases) what the law indeed does require. "Those who believe, even in good faith, that the income tax law is unconstitutional are similarly willful violators of the tax law if they understand the obligations the statute purports to impose upon them." *United States v. Burton,* 737 F.2d 439, 442 (5th Cir.1984).

*in camera* as hearsay, irrelevant, and as being more prejudicial than probative.

We agree for several reasons. First, Ms. Fitzhenry did not remember any videotape being shown, so that whether the tape had in fact been played was greatly in doubt. Defendant did place on the witness stand at least one witness who testified to the videotape's having been shown at the February 1 meeting, so that the jury had adequate opportunity to assess the two witnesses' credibility regarding whether the tape had been shown on the evening in question. Second, the defendant's being able to show the videotape to the jury could not in any way establish whether the tape had been played at the meeting Ms. Fitzhenry attended. Finally, even if language on the tape duplicated Mr. Bressler's remarks as reported by Ms. Fitzhenry, duplication would not mean that Mr. Bressler had not made the statements attributed to him. He could himself have been using language he had previously heard, especially if the videotape in question had been played at other meetings that he conducted. The defendant's argument lack merit.[3] In this situation the trial court's ruling was proper.

### IV

 Mr. Bressler also contends that the IRS failed to comply with the Privacy Act, 5 U.S.C. § 552a(e)(3),[4] by failing to inform him that filing returns is mandatory and that criminal sanctions, including imprisonment, may result from failing to comply. These arguments are meritless. The Eighth Circuit considered what notices comply with Privacy Act requirements in *United States v. Wilber*, 696 F.2d 79 (1982). The court there examined the notices the IRS included in its 1040 instruction booklets for the tax years at issue here, 1977 and 1978, and concluded, "Nothing in the Privacy Act requires agencies to employ the exact language of the statute to give effective notice. The IRS booklet clearly notifies taxpayers that filing is mandatory." *Id.* at 80. We agree that the IRS notice, informing taxpayers that they "*must* file a return or statement with us for any tax you are liable for" adequately and clearly informs taxpayers that filing is mandatory.

 The notice need not inform the taxpayer of the specific criminal penalty that may be imposed to comply with Privacy Act requirements. *United States v. Dack*, 747 F.2d at 1176 n. 5; *United States v. Bell*, 734 F.2d 1315, 1318 (8th Cir.1984) (*per curiam*); *United States v. Wilber*, 696 F.2d at 80 (citing cases). Warning that the information may be turned over to the Department of Justice, or that the Depart-

---

3. Defendant's other evidentiary objections are worthy of only passing comment. A trial court's determinations of relevancy and materiality of evidence will be reversed only on a finding of a clear abuse of discretion. See *United States v. Solomon*, 688 F.2d 1171, 1178 (7th Cir.1982). Mr. Bressler argues that he should have been allowed to introduce both voluminous materials he claims to have distributed at his church and certain biblical passages to rebut testimony given by church member Ms. Lee. But the defendant himself during cross-examination had elicited the remarks to which he now objects, remarks which had no relevance to the limited matters on which Ms. Lee had testified on direct examination. Defendant also wanted to call a defense witness to testify regarding a trip the witness took in 1982 with the defendant to the IRS. The district court did not abuse its discretion in ruling that this hearsay evidence was irrelevant to the defendant's failure to file income tax returns for tax years 1977 and 1978, and to why he may have failed to file.

4. Section 552a(e)(3) provides that each agency that maintains a system of records shall:

(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

(A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(B) the principal purpose or purposes for which the information is intended to be used;

(C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and

(D) the effects on him, if any, of not providing all or any part of the requested information.

ment of Justice would be notified if information was not provided, is adequate. *United States v. Bell,* 734 F.2d at 1318 (citing cases). Consequently, the defendant received all the notice to which he was entitled. Furthermore, we agree with the government that even if the defendant had made a sustainable argument, the proper remedy is a civil action under Section 552a(g)(1) of the Privacy Act, not dismissal of the indictment.

The defendant's other arguments lack merit.[5] The conviction is affirmed.

### ORDER

We have just received defendant's supplemental reply brief to the government's reply brief. The arguments therein are singularly unpersuasive. Counsel compounds the error by misrepresenting as Seventh Circuit precedent a Northern District of Illinois opinion by Judge Shadur, *United States v. Wojtas,* 611 F.Supp. 118 (N.D.Ill.1985). Contrary to counsel's statement, the Seventh Circuit has not "reject[ed] *Moore, supra,* and specifically embrace[d the First Circuit's opinion in] *Aitken, supra* " (Supp.R.Br. at 3). Judge Shadur's remarks appeared only in an appendix to the main body of his *Wojtas* opinion merely to illustrate a point, and were unrelated to the issue being decided. 611 F.Supp. at 122. However helpful these remarks might be were we considering in the first instance the jury instruction approved by *Moore,* they do not address the issue before us—whether the jury instruction given constituted plain error. Counsel would have been better advised to address *Witvoet,* which is relevant Seventh Circuit precedent and which the government

brought to counsel's attention pursuant to Circuit Rule 11, in his supplemental reply brief than to make misleading references to the dicta in *Wojtas.* Therefore we adhere to our August 27 opinion herein.

---

5. Mr. Bressler argues first that the district court lacked subject matter jurisdiction. We rejected the identical argument in *United States v. Koliboski,* 732 F.2d 1328 (7th Cir.1984), observing that "[c]ourts too numerous to enumerate have rejected this silly claim, and we now specifically reject it." *Id.* at 1329.

His argument that he was deprived of his Sixth Amendment right is even more ridiculous, given his refusal of court-appointed counsel. That refusal in these circumstances constitutes a valid waiver. We have specifically held in a similar situation that there is no constitutional

right "to representation by nonlawyers or laymen." *United States v. Thibodeaux,* 758 F.2d 199, 201 (7th Cir.1985). Bressler has not shown that he was prejudiced in his defense in any way. Furthermore, as the trial court did in *Thibodeaux,* the district court here had a licensed attorney standing by during the trial to assist Bressler, in addition to allowing him to confer with two friends. Having received an adequate and fair trial, Bressler cannot now complain.