**UNITED STATES of America, Appellee,**

v.

**Victor F. ORLOWSKI, Appellant.**

**No. 85–2375.**

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1986.

Decided Dec. 31, 1986.

Rehearing Denied Feb. 4, 1987.

---

David V. Capes, Clayton, Mo., for appellant.

James E. Crowe, Jr., Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

A two-count indictment charged appellant Victor Orlowski with willfully making and subscribing false income tax returns for calendar years 1977 (count I) and 1978 (count II), in violation of the Internal Revenue Code of 1954 § 7206(1), I.R.C. § 7206(1) (1982).[1]  Counts I and II of the

---

**1.** That section, as applicable, reads:

Any person who—

(1) Declaration under penalties of perjury

Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * *

\* \* \* \* \* \*

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 * * *, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

indictment alleged that while Orlowski reported certain sums as his "Total income" on his 1977 and 1978 federal tax returns, he "well knew and believed, substantial 'Total income' should have been reported in addition to that heretofore stated."

A jury convicted Orlowski on both counts. The district court[2] sentenced Orlowski to three months participation in a work release program on count I and five years probation and a $3,000 fine on count II. Orlowski appeals, contending that (1) prosecution concerning his 1977 tax return was time-barred because the statute of limitations was not tolled during the sixty-day appeal period following entry of judicial orders enforcing IRS summonses; (2) the Government, by not establishing that the proceeds he received in 1977 and 1978 from the manufacture and sale of fish-cutting saws constituted "partnership income", failed to prove that he substantially understated his income during these two years; (3) the trial court erred in admitting into evidence the Government's summary charts which categorized payments received by him from the fish saw business as "unreported partnership income"; and (4) the trial court erred in instructing the jury on tax liability for partnership income.

We have carefully reviewed the record and conclude that count I is not time-barred, and that the conviction on both counts should be affirmed.

## I. BACKGROUND

Despite the length of the trial, the evidence bearing on this appeal can be summarized with relative brevity. During the tax years in question, Victor Orlowski was employed on a semi-regular basis by several food processing companies, J & R Custom Foods and Tamara Foods, among others. At the same time, Orlowski did independent work within the same field of business, namely, consulting work for various other food processing companies, the selling of food processing equipment and the

incorporation of Victor Foods, Orlowski's own food processing business.

The Government claimed that these assorted independent business ventures brought Orlowski $78,051 in 1977 and $36,-727 in 1978, none of which was incorporated into his statement of total income on his 1977 and 1978 tax returns. According to the Government, the only income Orlowski reported came from his regular employment. For example, Orlowski's accountant testified that he arrived at the total income figure of $20,313 stated on Orlowski's 1977 return when he added what Orlowski claimed to have earned in wages at J & R Custom Foods that year to the gross receipts Orlowski received from O'Fallon Shoe Repair, a business owned by his wife. On his 1978 return, the principal item was noted "management services—Tamara Foods, Inc." for the amount of $8,310. Orlowski stated his total income that year to be the same, $8,310.

According to the Government's evidence, Orlowski obtained most of his unreported income during 1977 and 1978 from the manufacture and sale of fish-cutting saws. Beginning in late 1976, Orlowski contracted with Iceland Products, Inc. (Iceland, now Iceland Seafood Corporation) to build a series of fish-cutting saws for use in Iceland's frozen fish processing plant in Camp Hill, Pennsylvania. Between January 1977 and November 1978, Orlowski delivered nine such saws to Iceland. The Expedite Machine Shop in St. Louis (Expedite), a shop owned and operated by Ned Gentry, constructed these nine saws. Iceland paid a total of $391,795 for the saws, of which the Government claims Orlowski received $59,-210 in 1977, and $23,427 in 1978. Gentry testified that Iceland would pay Expedite for the saws and that he would then pay Orlowski whatever sums Orlowski requested out of the Expedite account. Gentry also testified that these checks were seldom made payable to Orlowski himself, but were instead made payable to others at

---

**2.** The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

Orlowski's request, in most instances to O'Fallon Shoe Repair where they were ultimately deposited in the O'Fallon Shoe Repair account at the Bank of Old Monroe in Old Monroe, Missouri.

Orlowski failed to produce any evidence at trial regarding the profitability of the fish saw business. Neither Gentry nor Orlowski maintained records of the business and neither filed a partnership tax return. Gentry testified that he and Orlowski had agreed that Expedite would incur all costs of construction, and that whatever money was left over would be split between the two of them. The parties did not formally calculate the split. Whenever Orlowski would ask him for money, Gentry testified that he would write a check payable to O'Fallon Shoe Repair because, in his words, "I figured he had it coming, we'd catch it up on the next saw if we didn't." (Tr. 1–184).[3]

## II. DISCUSSION

### A. Statute of Limitations

■ We first address whether prosecution over the first count of the indictment is, as Orlowski contends, time-barred. All criminal tax prosecutions under the Internal Revenue Code of 1954 are governed by a six-year statute of limitations. I.R.C. § 6531 (1982). According to a strict application of the six-year statute to count I, the Government's indictment is untimely. While Orlowski filed his 1977 return on October 15, 1978, the Government did not file its indictment until January 18, 1985, ninety-two days after the statutory deadline.

Both parties agree that the statute was tolled fifty-five days during the issuance of certain IRS summonses. To make up for the remaining days, the Government contends that the statute was also tolled during the sixty-day appeal period following entry of a district court's order enforcing compliance with the summonses. If the statute is deemed tolled during this sixty-day appeal period, both parties agree that the Government's indictment is timely.

In 1980, pursuant to a civil audit of Orlowski's civil tax liability for 1977 and 1978, the IRS issued administrative summonses to five banks requesting that they produce the records of all accounts maintained by Orlowski and his wife during these two years. The IRS also issued a summons to Victor Orlowski in his capacity as the president of Victor Foods, Inc., to produce records of the Victor Foods business. Pursuant to a provision of the Internal Revenue Code, Orlowski was notified of the service of the summonses, I.R.C. § 7609(a)(1) (1982), and, as was his right, Orlowski directed the banks not to comply with the summonses. I.R.C. § 7609(b)(2).[4] On September 4, 1981, the Government filed petitions to enforce each of the summonses in the Eastern District of Missouri. I.R.C. § 7609(d)(2). On October 13, 1981, Orlowski entered a consent to the enforcement of the IRS summons of the Victor Foods' records. On October 14, 1981, the district court directed that the summonses against each of the five banks be enforced by separate orders, and Victor and Sharon Orlowski interposed "no objection" on the record of each case. Neither the five

---

3. The Government also produced evidence that Orlowski received money from a variety of sources other than the fish saws business during the tax years in question. This included consulting fees from Iceland in the amounts of $10,400 in 1977 and $9,800 in 1978; $3,300 from the Mar Craft Company in 1977 as a commission for the sale of a conveyor system built by Mar Craft to Iceland; some $5,141 from the sale of various pieces of food processing equipment to Sun Ring Foods; and finally, $3,500 in funds diverted from Crossroads Development, a public entity which served as the disbursing agent for Small Business Administration loans.

4. At the time Orlowski took this action, section 7609(b) read in part:

(2) **Right to stay compliance.**—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to stay compliance with the summons if, not later than the 14th day after the day such notice is given in the manner provided in subsection (a)(2)—

(A) notice in writing is given to the person summoned not to comply with the summons, * * *.

I.R.C. § 7609(b)(2)(A).

banks nor Orlowski appealed the district court's orders regarding the bank summonses during the sixty-day period provided under Fed.R.App.P. 4(a)(1).

Whether the sixty-day appeal period tolls the statute of limitations for criminal tax prosecutions is contingent upon holding that a proceeding to enforce an IRS summons is "pending" during the appeal period. Section 7609(e), which suspends the statute of limitations in the event a taxpayer takes action, as Orlowski did here, to stay a third party's compliance with an IRS summons, reads in part, "the running of any period of limitations * * * under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending." I.R.C. § 7609(e).

We hold that a proceeding to enforce an IRS summons should be deemed "pending" until there exists full compliance with the IRS summons or until the sixty-day appeal period following the entry of the judicial enforcement order has lapsed, whichever is shorter. This rule follows directly from the statute. A taxpayer who intervenes in a third party summons under section 7609(b)(1) may appeal a judicial enforcement order.[5] Such an appeal is valid when filed at any time during the sixty-day appeal period so long as the parties subject to the summonses have not yet complied with the summonses. This circuit, as well as every other circuit that has considered the question, has determined that compliance with an IRS summons moots a taxpayer's appeal of summons enforcement orders.[6] Thus, because the taxpayer has the capacity to appeal an outstanding summons enforcement order at any time during the sixty-day appeal period, a proceeding to enforce an IRS summons is necessarily "pending" during this sixty-day appeal period.

Applying this rule to the present case, the prosecution under count I of Orlowski's indictment is not time-barred. The record reveals that full compliance with the five summonses was not achieved until after the lapse of the sixty-day appeal period. Although three of the five banks subject to the summonses fully complied with the September 4, 1981 enforcement order within the sixty-day appeal period, two banks, the Bank of Old Monroe and the First Bank of St. Louis, did not completely comply with the summonses until April 11, 1983 and April 8, 1983, respectively. Orlowski could have appealed the district court's enforcement orders at any time during the sixty-day appeal period. Orlowski's failure to intervene in the summonses prior to entry of the district court's orders did not bar his right to appeal; federal courts permit postjudgment intervention for the purpose of appeal. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); *Burkhalter v. Montgomery Ward & Co.*, 676 F.2d 291 (8th

---

5. This section reads:

   (1) **Intervention.**—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons * * *.

   I.R.C. § 7609(b)(1).

6. *See, e.g.,* First Circuit: *United States v. Arthur Andersen & Co.,* 623 F.2d 720 (1st Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980); Second Circuit: *United States v. Deak-Perera Int'l Banking Corp.,* 610 F.2d 89 (2d Cir.1979); Third Circuit: *Vesco v. SEC,* 462 F.2d 1350 (3d Cir.1972) (analogous SEC subpoena case); Fourth Circuit: *Kurshan v. Riley,* 484 F.2d 952 (4th Cir.1973); Fifth Circuit: *United States v. Sherlock,* 756 F.2d 1145 (5th Cir.1985); Sixth Circuit: *United States v. Patmon,* 630 F.2d 458 (6th Cir.1980); Seventh Circuit: *United States v. Porter,* 711 F.2d 1397 (7th Cir.1983); Eighth Circuit: *United States v. Equity Farmers Elevator,* 652 F.2d 752 (8th Cir.1981); Ninth Circuit: *EEOC v. St. Regis Paper Co.,* 717 F.2d 1302 (9th Cir.1983) (analogous EEOC subpoena case); Tenth Circuit: *United States v. Trails End Motel, Inc.,* 657 F.2d 1169 (10th Cir.1981).

   Although the Third Circuit recently held that an appeal of a district court order enforcing IRS summonses was not moot despite compliance with the summonses, another issue was involved in the case, namely, whether the IRS could use the information it obtained under the summonses. *Gluck v. United States,* 771 F.2d 750 (3d Cir.1985).

Cir.1982); *In re Grand Jury Proceedings*, 655 F.2d 882 (8th Cir.1981). Thus, the statute of limitations on count I was tolled starting September 4, 1981 and continued to be tolled until the lapse of the sixty-day appeal period on December 14, 1981, a total of 101 days. This is over a week longer than the ninety-two days needed to make the Government's January 18, 1985 indictment timely.

### B. Orlowski's Statement of "Total Income" on his 1977 and 1978 Returns

Orlowski further contends on appeal that the district court erred in failing to direct a verdict in his favor as to both counts I and II. Orlowski claims that most of the income the Government alleges Orlowski failed to incorporate into his statement of "total income" on his 1977 and 1978 tax returns consisted of the payments he received from the fish saw business, a business he claims was actually a legal partnership between him and Ned Gentry. In the absence of proof that these proceeds constituted "partnership income" [7], Orlowski claims that the Government failed to prove that Orlowski substantially understated his "total income" on his 1977 and 1978 tax returns. Orlowski himself produced no concrete evidence that either a partnership existed between him and Ned Gentry or that the alleged partnership lost money on the fish saw venture. Thus, Orlowski in essence claims that he is innocent of the charges because the Government cannot prove the nonexistence of alleged partnership expenses, the existence

of which he himself has not proved and most likely cannot prove.

The argument is artful, but must be rejected. In *United States v. Ballard*, 535 F.2d 400 (8th Cir.1976), we set forth the Government's burden of proof in making out its prima facie case of a section 7206(1) violation. In that case, we held that the Government's evidence of unexplained gross receipts established a prima facie case of the taxpayer's failure to disclose substantial amounts of gross income. "[E]vidence of unexplained receipts", this court and others have held, "shifts to the taxpayer the burden of coming forward with evidence as to the amount of offsetting expenses." *United States v. Bell*, 734 F.2d 1315, 1317 (8th Cir.1984); *Siravo v. United States*, 377 F.2d 469, 473 (1st Cir. 1967). *See also United States v. Engle*, 458 F.2d 1017, 1020 (8th Cir.), *cert. denied*, 409 U.S. 875, 93 S.Ct. 122, 34 L.Ed.2d 127 (1972); *United States v. Lodwick*, 410 F.2d 1202, 1204 (8th Cir.), *cert. denied*, 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969).

The Government's burden under section 7206(1) announced in *Ballard* is the same when the taxpayer claims the existence of a partnership. Under the tax code, whatever taxes are owed on income accumulated by the partnership business must be paid by the partners in their individual capacities, just as a taxpayer must pay taxes on that portion of his salary or wages that represents income. I.R.C. § 701 (1982).[8] *See Schlude v. Commissioner of Internal Revenue*, 372 U.S. 128, 129 n. 1, 83 S.Ct. 601, 601 n. 1, 9 L.Ed.2d 633 (1963). As in the case of an individual taxpayer, the re-

---

7. As the appellant notes in his brief, "partnership income" can be established in one of four ways. These are proof that (1) the partnership was profitable during the taxable year and that the taxpayer received or was entitled to receive a share of the profits, I.R.C. § 702(c) (1982); *United States v. Basye*, 410 U.S. 441, 454, 93 S.Ct. 1080, 1088, 35 L.Ed.2d 412 (1973); (2) a partnership made payments to a partner in excess of his basis in the partnership, I.R.C. § 731(a)(1) (1982); (3) payments made to a partner were "guaranteed payments" in that they were made "without regard to the income of the partnership", I.R.C. § 707(c) (1982); or (4) funds obtained by a partner from a partnership were

obtained by embezzlement or misappropriation, *Hartman v. United States*, 245 F.2d 349, 353 (8th Cir.1957); *Davis v. United States*, 226 F.2d 331, 334–35 (6th Cir.1955), *cert. denied*, 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956).

8. Section 701 reads:

> A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.

I.R.C. § 701.

ceipts of a partnership are not taxable if they are outweighed by expenditures. I.R.C. § 702 (1982). Thus, the Government's proof in making out a prima facie case of an individual taxpayer as compared to a partner's willful substantial understatement of income should also be the same. We hold, therefore, that evidence that a partner received unreported payments from the alleged partnership entity in excess of his own expenditures in furtherance of the partnership's business establishes the Government's prima facie case of a section 7206(1) violation.

The Government in the present case met its burden of proof for a prima facie case of a two count section 7206(1) violation. As in *Ballard*, the Government introduced evidence that Orlowski received payments from the fish saw business that far exceeded his expenditures.[9] Specifically, the Government introduced evidence that Orlowski received $59,210 in 1977 and $23,427 in 1978. This evidence established a prima facie case, whether or not payments from the fish saw venture are treated as a form of compensation to Orlowski or as a partnership distribution. At the point this evidence was introduced, the burden shifted to Orlowski to prove the existence of the alleged partnership and of alleged partnership expenditures that exceeded the alleged partnership's profits. Orlowski produced no such evidence. We therefore affirm the conviction on both counts I and II.

## C. Summary Exhibits

■ Orlowski also claims the district court erred in admitting Government Ex-

hibits 50A through 50J, consisting of summary charts reflecting Orlowski's total unreported income and tracing the disposition of the checks generating Orlowski's receipts for the years in suit. Orlowski seriously objects only to the summaries entitled "Computation of Total Income" which categorized Orlowski's partnership payments as "unreported partnership income". Summary exhibits are explicitly authorized by Fed.R.Evid. 1006. We have previously held that "[w]here charts which fairly summarize the evidence are used as an aid in understanding the testimony already introduced and the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary, the use of charts is proper." *United States v. Nelson*, 735 F.2d 1070, 1072 (8th Cir.1984) (quoting *United States v. King*, 616 F.2d 1034, 1041 (8th Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980)). The record reveals that these exhibits were summaries of the various kinds of income mentioned in testimony and documents already admitted into evidence. IRS agent Stephen Gilbert, who prepared these exhibits, was subject to cross-examination on the sources of all the information and the conclusions that the charts contained. Thus, we hold that the trial judge's use of the summary exhibits and his decision to send the exhibits to the jury was within the trial judge's sound discretion. *United States v. Lewis*, 759 F.2d 1316, 1329 n. 6 (8th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 407, 88 L.Ed.2d 357 (1985).

**9.** The jury was entitled to assess the credibility of the evidence and thus to reject Orlowski's testimony that most of these payments constituted reimbursements for his expenses in the venture. *Moore v. Edison Co.*, 804 F.2d 1026 (8th Cir.1986). Orlowski testified to some $38,000 in expenses on the saws, consisting of $28,000 in cash payments to Gramlich in 1977 and $14,000 in 1978 to secure the contracts with Iceland, and some $10,000 in additional expenses in 1977 and $4,000–$6,000 in 1978 toward labor and materials on the saws. While Gramlich denied receiving any cash payments, there was evidence of one such payment and Gentry admitted to making it. The record also shows that

Orlowski's alleged sources for the cash payments—the O'Fallon Shoe Repair checking account in 1977 and his personal checking account in 1978—did not reflect cash withdrawals in amounts anywhere near sufficient to raise the cash amounts described by Orlowski. Gentry testified that although Orlowski may have paid some labor and material costs, he did not recall them to be of a significant amount. Even if Orlowski's account of his expenses on the venture in 1977 and 1978 is to be believed, he still received and failed to report over $21,000 in 1977 and over $11,000 in 1978 in gross income from the venture.

### D. Jury Instructions

██ Finally, Orlowski claims that the district court erred in instructing the jury regarding tax liability for partnership income because the Government failed to prove that the partnership payments received by Orlowski constituted income. For reasons already stated in part II.B., we reject this contention.

### III. CONCLUSION

The judgment of the district court is affirmed as to all issues raised on appeal.